FRANKLIN DELANO WADE
PETITIONER FOR WRIT OF HABEAS CORPUS
*vs.*
WARDEN OF THE STATE PRISON

Cumberland. Opinion, April 25, 1950.

*Richard S. Chapman,* for petitioner.

*Daniel C. McDonald,* for State.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ. (MURCHIE, C. J., dissenting; MERRILL, J., concurring with majority specially; WILLIAMSON, J., concurring with majority with reservations; MURCHIE, C. J., further dissenting.)

FELLOWS, J.    This is a petition for writ of habeas corpus of Franklin Delano Wade of Portland, Maine who brings

the petition by Catherine A. Wade, his mother. Franklin Delano Wade is a child under the age of seventeen years.

The petition comes to the Law Court on report upon facts agreed, Revised Statutes, (1944), Chapter 91, Section 14, and certified for immediate decision, by agreement of counsel. *Welch Petr.* v. *Sheriff*, 95 Me. 451, 454. The Law Court is to determine whether or not the writ shall issue.

The facts are these: Franklin Delano Wade was born in Portland, Maine on July 27, 1933. He was 16 years old when the offense was alleged to have been committed, and when he was arrested upon a complaint and warrant issued November 22, 1949 from the Portland Municipal Court. He was charged with manslaughter. The record of the Municipal Court shows "Date of hearing—November 22, 1949. Plea — Not guilty — waived reading and hearing. Judgment of Court — Probable cause. Result in Full — Bound over to the January Term of the Superior Court, A. D. 1950 — Bail — $5000."

The stipulation made by counsel says that the Judge of the Municipal Court "refused to exercise jurisdiction over the offense with which the Defendant was charged, and rendered judgment of 'Probable Cause.' "

Wade was indicted for manslaughter at the January Term, 1950 of Superior Court for Cumberland County, to which indictment he pleaded not guilty. He was placed on trial and the jury returned a verdict of guilty. He was sentenced by the Presiding Justice to a term of not less than seven years nor more than fourteen years in the State Prison, where he is now held under warrant of commitment issued by the Superior Court.

The petition for the writ of habeas corpus alleges that Wade is now unlawfully imprisoned by the Warden of the State Prison because, in the words of the petition, "the offense for which he was charged, not being one the punishment for which may be imprisonment for life or for any

term of years, the Superior Court was without jurisdiction to try and sentence him upon the indictment which was returned against him, but that the exclusive original jurisdiction over the offense with which he was charged in said Complaint and Warrant and in the Indictment returned in the Superior Court, was and now is in the Portland Municipal Court as a Juvenile Court."

The statutes under consideration are Revised Statutes (1944), Chapter 133, Section 2 and Section 6, as amended by Chapter 334, of the Public Laws of 1947. The pertinent parts of these sections, as amended, are as follows:

"**Section 2.** Judges of Municipal Courts within their respective jurisdictions shall have exclusive original jurisdiction over all offenses, except for a crime the punishment for which may be imprisonment for life or for any term of years, committed by children under the age of 17 years, and when so exercising said jurisdiction shall be known as juvenile courts. Any adjudication or judgment under the provisions of sections 4 to 7, inclusive, shall be that the child was guilty of juvenile delinquency, and no such adjudication or judgment shall be deemed to constitute a conviction for crime.

**Section 6.** A municipal court may place children under the age of 17 years under the supervision, care and control of a probation officer or an agent of the department of health and welfare or may order the child to be placed in a suitable family home subject to the supervision of a probation officer or the department of health and welfare or may commit such child to the department of health and welfare or make such other disposition as may seem best for the interests of the child and for the protection of the community including holding such child for the grand jury or commitment of such child to Pownal State School upon certification of two physicians who are graduates of some legally organized medical college and have practiced three years in this state, that such child is mentally defective and that his or her mental age is

> not greater than ¾ of subject's life age nor under 3 years, or to the state school for boys or state school for girls; but no boy shall be committed to the state school for boys who is under the age of 9 years and no girl shall be committed to the state school for girls who is under the age of 9 years, and no municipal court shall sentence a child under the age of 17 years to jail, reformatory or prison; any child or his next friend or guardian may appeal to the superior court in the same county in the same manner as in criminal appeals, and the court may accept the personal recognizance of such child, next friend or guardian, and said superior court may either affirm such sentence or order of commitment or make such other disposition of the case as may be for the best interests of such child and for the peace and welfare of the community.
>
> Where, however, an appeal is taken and the offense is one that must be prosecuted by indictment, the county attorney shall submit the evidence relating to such crime to the grand jury convening at the criminal term at which the appeal is to be heard, and if the grand jury return an indictment for such offense the accused may, in the discretion of the court, be tried on such indictment, or the court may order it placed on file, or make such other disposition thereof as it may determine, including the dismissal thereof, and proceed to hear the appeal, and either affirm such sentence or order of commitment, or make other disposition of the case in accordance with the provisions relating to appeal hereinbefore provided."

The above statute makes every municipal court a juvenile court when exercising its exclusive original jurisdiction over offenses committed by a child under the age of seventeen years. It has such jurisdiction over all offenses committed by such children "except for a crime the punishment for which may be imprisonment for life or for any term of years." The sixteen year old petitioner stands committed to the State Prison by the Superior Court for the offense of manslaughter. He was so committed without prior action by the Municipal Court acting as a Juvenile

Court. We must therefore determine whether or not manslaughter is a crime *"the punishment for which may be * * * for any term of years,"* as that phrase is used in the foregoing exception to the exclusive original jurisdiction of the juvenile court.

The punishment for murder, kidnapping, and for treason, is imprisonment for life. Such offenses are clearly excepted from the jurisdiction of the juvenile court. What crimes are excepted by the phrase "the punishment for which *may be * * * for any term of years?"* Does it, as claimed by the State, except *all* crimes which may be punished by *a* term of years, *a* term of years being two years or more? Or does it except *only those crimes* which may be punished by a term of years, the length of which term is limited only by the discretion of the judge imposing sentence? In other words, does the phrase in the foregoing exception have the same meaning as when used in the statutes to fix punishment for many serious offenses like robbery, R. S. (1944), Chap. 117, Sec. 16; rape, R. S. (1944), Chap. 117, Sec. 10; corrupting water, R. S. (1944), Chap. 124, Sec. 1; burglary, R. S. (1944), Chap. 118, Sec. 8; perjury, R. S. (1944), Chap. 122, Sec. 1; burning of buildings in the night time, R. S. (1944), Chap. 118, Sec. 2; counterfeiting, R. S. (1944), Chap. 120, Sec. 5; depositing bomb to cause injury, R. S. (1944), Chap. 117, Sec. 22; conviction of felony after prior conviction and sentence, R. S. (1944), Chap. 136, Sec. 3, in all of which foregoing offenses the punishment is "any term of years?" *State* v. *Fraizer*, 144 Me. 383; 64 Atl. (2nd) 179.

For some felonies like manslaughter, R. S. (1944), Chap. 117, Sec. 8, the punishment is restricted to not more than so many years, and in a multitude of other offenses the amount of punishment is restricted, and varies from months to years, depending on whether made a misdemeanor or a felony. There are very few felonies, if any, where punish-

ment for the felony has been restricted to a period of *less* than two years.

The purpose of juvenile courts, and laws relating to juvenile delinquency, is to carry out a modern method of dealing with youthful offenders, so that there may be no criminal record against immature youth to cause detrimental local gossip and future handicaps because of childhood errors and indiscretions, and also that the child who is not inclined to follow legal or moral patterns, may be guided or reformed to become, in his mature years, a useful citizen.

The work of the judge of a municipal court, sitting as the judge of a juvenile court, is vitally important to the welfare of our state. He does not pass upon the crimes and misdemeanors of childhood wholly from the legal standpoint. The basic and primary idea of the legislature is salvation, not punishment. The nature of juvenile work is more philanthropic than the work of the common law jurist. The legislature of Maine has therefore placed this authority in the hands of men who know humanity and can inspire the child with confidence and with a desire, in most instances, to become an upright citizen.

The history of the juvenile law in Maine shows that there is now a growing tendency in legislation to enlarge the jurisdiction and authority of juvenile courts, and if possible to save every child from a criminal record. The age of the child has been increased from 15 to 17 years, and jurisdiction has been extended from misdemeanors to some felonies. The jurisdiction has been enlarged from concurrent to exclusive and original.

The early common law treated alike the crimes of the adult and the offenses of those minors who had reached the age of criminal responsibility. The administration of the old criminal law with relation to children differed only according to the possession of paternal and benevolent attributes of the judges who presided in the courts. There are

many instances, in days long past, where a humane and understanding judge has dismissed or filed the charges against a first offending minor child, or has created, without statute authority, a juvenile probation system of his own to fit the circumstances.

In the past the fundamental idea of the law has been punishment and not reformation, but modern legislation recognizes that the treatment of a child should be correctional and rehabilitative rather than punitive. The child of today is the adult citizen of tomorrow and should be removed from the influence of improper environments and directed into the paths of rectitude by preventative and corrective means, if the next generation is to live in a peaceful and law abiding community. The immature must be given the chance to become the good citizen, or if necessary be forced to give up an immoral or criminal life. It is the welfare of the child *and* the State, that the statute is aimed to protect, by exercising a parental control, without the scar of the so-called criminal record. Unfortunately, it will be necessary at times to inflict punishment on the vicious or depraved, and this the statute recognizes.

Juvenile courts are courts of special and limited jurisdiction and authority. Children are to be dealt with in a different manner than are adults. The offending child is not found by the juvenile court to be a criminal but guilty of juvenile delinquency. The cases are heard at such times and at such places as the court may determine, and the general public is excluded. The records are not open to inspection by the public except by permission of the court. R. S. (1944), Chap. 133, Sec. 4. Special probation officers may be appointed to care for offenders under the age of seventeen. R. S. (1944), Chap. 133, Sec. 5. A child may be placed under the care of a probation officer or an agent of the department of health and welfare, or placed in a suitable home or in the State School, or "such other disposition as may seem best for the interests of the child and for the

protection of the community including holding such child for the grand jury * * * and no municipal court shall sentence a child under the age of 17 years to jail, reformatory or prison." R. S. (1944), Chap. 133, Sec. 6 as amended by Chapter 334 of the Public Laws of 1947. This statute also provides for appeal to the Superior Court by the child or by his guardian or next friend from the decision or order made by the juvenile court, and on appeal the Superior Court has jurisdiction to affirm the sentence or order of the juvenile court or to make such other disposition as may be for the best interests of the child and for the peace and welfare of the community. Public Laws of 1947, Chapter 334.

"Delinquency," as the term is used in the present juvenile law, was unknown to the common law. A delinquent child is a child under the age limit who violates the criminal law or who is disobedient or incorrigible, or unmanageable, or immoral, or growing up or likely to grow up in idleness and crime. The statute says delinquency is not crime, and a delinquent child is not a criminal. 43 C. J. S. "Infants," 228, Section 98, 99. "Delinquency, as distinguished from crime, usually implies a psychological rather than a judicial attitude toward the child offender." Webster's New International Dictionary.

At the common law, the same court had jurisdiction over juvenile offenders that had jurisdiction over those of mature years. Children under seven years of age were conclusively presumed to lack mental capacity to commit a crime. In the case of felonies, if the child was over seven years, he could be proceeded against by complaint and warrant before a magistrate, and if the magistrate found that a crime had been committed, and that there was probable cause that the infant was guilty, he could be held for the grand jury; or a prosecution could be instituted before the grand jury without going before the magistrate in the first instance. Such was the law in Maine until the year 1931. *Richardson* v. *Dunn,* 128 Me. 316; *Knight* v. *Fort Fairfield,* 70 Me. 500.

By Chapter 241 of the Public Laws of 1931, it was provided that judges of municipal courts should have exclusive original jurisdiction over all offenses committed by children under the age of fifteen years, and that no adjudication or judgment should be deemed to constitute a conviction for crime. A child could be held for the grand jury if the offense was aggravated. *State* v. *Rand,* 132 Me. 246. By Public Laws of 1943, Chapter 322, an exception was made, and after the enactment of R. S. (1944), Chap. 133, Sec. 2, the municipal courts, when acting as juvenile courts, had exclusive original jurisdiction over all offenses, except for a *capital or otherwise infamous crime* committed by children under the age of 17 years. The wording of this exception in the Statutes of 1944 was probably suggested by the Constitution of Maine, Article 1, Section 7, that "no person shall be held to answer for a capital or infamous crime unless on a presentment or indictment of a grand jury." Maine now has no capital crime punishable by death, but all felonies are considered infamous. *State* v. *Vashon,* 123 Me. 412.

From 1943 to the time of the amendment by Chapter 334 of the Public Laws of 1947, the municipal courts, as juvenile courts, had no exclusive original jurisdiction over any cases of felony, and the child over seven and under 17 accused of felony was dealt with as a common law criminal and could only be held for action by a grand jury. The amendment of 1947 struck out of the law the words "capital or otherwise infamous crime" and inserted in place thereof the words that we are now considering "a crime the punishment for which may be imprisonment for life or for *any term of years.*"

The municipal courts have had, from the establishment of the juvenile courts, jurisdiction over all misdemeanors and authority to find juvenile delinquency when the child offender has broken a law where the punishment was less than one year. The juvenile court had no exclusive original jurisdiction over any felony from 1943 to the amendment

of 1947.  It now has exclusive original jurisdiction over all felonies "except for a crime the punishment for which may be imprisonment for life or for any term of years."

The largest number of felonies, and felonies likely to be committed by the child under 17 years, carry a statute term of punishment of "not more than."   Examples of such felonies are maliciously killing or injuring domestic animals, R. S. (1944), Chap. 127, Sec. 1; assault with intent to kill, R. S. (1944), Chap. 117, Sec. 6; assault with intent to rape, R. S. (1944), Chap. 117, Sec. 12; assault with intent to rob, R. S. (1944), Chap. 117, Sec. 17; breaking and entering with intent to commit a felony, R. S. (1944), Chap. 118, Sec. 11.  In all felonies where the maximum allowed is two years, or more than two years, it can be said that punishment is for "a term of years."  It is not punishment for *"any term of years"* because only in those serious crimes formerly capital, or punishable by life imprisonment, such as rape, robbery and burglary, does the statute permit the court to sentence for *"any term of years."*

In view of the manifest plan of the legislature to broaden the authority of the juvenile court, it is plainly apparent that *a* term of years is not *any* term of years.  To give to "any term," the meaning of "a term," does not enlarge the jurisdiction of the juvenile court to an appreciable extent, if it does to any degree.  The felonies where the juvenile court would have jurisdiction, under such interpretation, would be only those where punishment may be for one year and for less than two years, and such felonies, if any, are very few.  If the legislature had meant to give jurisdiction in only those felonies where punishment may be less than two years, it would have been a simple matter to say so. The legislature, on the contrary, has used the term commonly used by it in the statutes to fix punishment for some of the very serious offenses.

There are some cases where terms of years have been defined, as in a lease where right to renew for "a term of

years," meant not less than two years. *Metcalf* v. *Norton*, 119 Me. 103, and in Massachusetts "any term of years" was construed as two or more years where a particular statute provided for punishment in cases of former conviction. *Ex Parte Seymour*, 14 Pickering 40; *Ex Parte Dick*, 14 Pickering 86. We have found no case where a statute excluded from jurisdiction a crime punishable by "any" term of years where the construction was "a" term, and we cannot believe the legislature intended to exclude the very many felonious acts of which juvenile offenders are so frequently guilty. It would limit, in effect, the jurisdiction of the juvenile court to misdemeanors only, as was provided in the statute before the last amendment of 1947. There would be no real, sufficient, or sensible reason for the 1947 amendment "any term of years" if there was not an intention to extend the jurisdiction of the municipal courts. See P. L. of Maine (1931), Chap. 241; P. L., 1933, Chap. 18 and Chap. 118; P. L., 1937, Chap. 238; P. L., 1941, Chap. 245; P. L., 1943, Chap. 177 and Chap. 322; R. S. (1944), Chap. 133 as amended by the Public Laws of 1947, Chap. 334; see also 43 C. J. S. "Infants" 228, Sections 98 and 99; 31 Am. Jur. "Juvenile Courts" 796, Sections 24-44.

Manslaughter is not a crime punishable by imprisonment for any term of years, as that phrase is used in our statutes. It is punishable for *a* term of years. The juvenile court has jurisdiction. It is a crime, however, where the facts may be serious, in every sense of the word, and if the proper procedure is taken by the juvenile court, there is no question but that it may hold the child for grand jury action. If in the determination of the municipal court, acting as a juvenile court, a child guilty of juvenile delinquency should be dealt with as a criminal, for the protection of the community as well as for the interests of the child, it can hold such child for the grand jury. R. S. (1944), Chap. 133, Sec. 6 as amended by Chapter 334 of the Public Laws of 1947. The only adjudication or judgment of guilt making final disposition of the case that the judge of the municipal court can

make is that the child is guilty of juvenile delinquency. By express provision of Section 6 he cannot sentence a juvenile offender to prison or even to jail. By constitutional provision no one can be sent to the state prison except on conviction on an indictment returned by the grand jury. Neither does the judge of the municipal court, in dealing with the juvenile offender and in the exercise of his exclusive original jurisdiction, have authority to find a crime committed and probable cause in the same manner as when dealing with an adult. If the child is held for the grand jury when charged with an offense within the exclusive original jurisdiction of the municipal court, it is only because as a juvenile delinquent it seems under the circumstances to be for the best interest of the child and for the protection of the community that he be so held.

The legislature has seen fit to provide a separate and distinct method of handling certain offenses when committed by juveniles under the age of seventeen years, and manslaughter is one of these offenses. The original jurisdiction of the common law courts over such offenses has been taken away by legislative enactment. The original jurisdiction has been exclusively conferred upon the municipal courts acting as juvenile courts. The Law Court has no legal power or ethical right to determine or to express an opinion as to the wisdom of legislative enactments. We are only permitted to interpret the laws as enacted by the legislature and to determine if they are within constitutional requirements or have been properly applied to the case then before us.

It is clear that the legislature has recognized that under certain conditions juvenile offenders under the age of seventeen years should be dealt with as criminals and made amenable and accountable to the rigors of the criminal law.

It is the right of the juvenile and the state that the juvenile be treated as a delinquent unless and until there be a judicial determination by the municipal court, exercising

its jurisdiction as a juvenile court and exercising its discretion as to disposition of the case and the juvenile with which it is invested by Section 6 of the juvenile law, that the juvenile be held for the grand jury. The requirement that such jurisdiction be exercised and that the determination to hold for the grand jury as an act of discretion under the authority conferred by Section 6 are both jurisdictional and must be complied with before the Superior Court has jurisdiction to hear, sentence, or commit after a conviction on an indictment. These statutory requirements being jurisdictional cannot be waived.

The record of the municipal court must show, either by express statement or by necessary implication from what is expressly stated therein, that the aforesaid necessary action has been taken in and by the municipal court. And especially must the record of the municipal court show by express declaration or by necessary implication that in holding for the grand jury it exercised the discretion conferred upon it by Section 6 of the juvenile law in making such disposition of the case. *Brooks* v. *Clifford,* 144 Me. 370; 69 Atl. (2nd) 825; *Faloon* v. *O'Connell,* 113 Me. 30; *Porell* v. *Cousins,* 93 Me. 232; *State* v. *Hartwell,* 35 Me. 129.

A finding of probable cause and the fixing of bail is not in and of itself sufficient for such purposes. Especially is it not sufficient in this case where there is an express stipulation that after a plea of not guilty "the judge of said municipal court then refused to exercise jurisdiction over the offense with which the defendant was charged and rendered judgment of 'Probable Cause.' " Such docket entry and such stipulation not only fail to show that the municipal court in this case did exercise its jurisdiction over the offense with which the petitioner was charged and that it held him for the grand jury in the exercise of the discretion as to disposition of the case and the juvenile with which it was invested by Section 6 of the juvenile law, but establish that it did not do so. The sentence was pro-

nounced by a court which lacked the jurisdiction to try and sentence and the juvenile must be discharged. *Wallace* v. *White,* 115 Me. 513; *State* v. *Elbert,* 115 Conn. 589; 162 Atl. 769.

*Writ to issue.*

DISSENTING OPINION.

MURCHIE, C. J.  I am unable to concur in the opinion of Mr. Justice Fellows.  It construes a provision in that section of our municipal court law which vests such courts with power to punish a child for juvenile delinquency or, in the alternative, to hold him for a grand jury, in a manner which seems, to me, entirely without justification.  R. S., 1944, Chap. 133, Sec. 6.  It does so without stating, except by implication, the principle of statutory construction it applies.  The implication is that it gives statutory language its usual and ordinary meaning.  It is undoubted that the rules of statutory construction declare that language which is plain and unequivocal needs no construction.  It is obvious, however, that the opinion has dealt with a single provision without reference to the section, or the law of which it is a part, "as a whole," as a well established rule of construction requires.

Reliance on the unequivocal nature of the language is implicit in the manner in which the opinion casts full responsibility for the decision it carries on the legislature which wrote the provision into our law.  That was our Eighty-fifth Legislature, of which I was a member.  P. L., 1931, Chap. 241, Sec. 4.  The provision stands today, in R. S., 1944, Chap. 133, Sec. 6, in the exact language in which it was originally stated, without change in punctuation or context.

The provision follows express grant of power to place a child found guilty of juvenile delinquency on probation and carries a further express grant of power to:

>"make such other disposition as may seem best for the interests of the child and for the protection of the community including",

the power to commit him to a correctional institution. That is the only "other disposition" identified in P. L., 1931, Chap. 241, Sec. 4. Additional "other dispositions" since identified are to hold him for a grand jury and to commit him to the Pownal State School. When P. L., 1931, Chap. 241 became effective municipal courts were given a limited power to punish a child for juvenile delinquency, without reference to his interests or the protection of the community, by subjecting him to some form of probationary control, and they have been so limited at all times since. An express restriction was carried in the second paragraph of P. L., 1931, Chap. 241, Sec. 4, which prohibited a municipal court from holding a child for a grand jury except for an offense which this court in *State* v. *Rand et al.*, 132 Me. 246; 169 A. 898, declared was beyond its jurisdiction. This curtailed the authority such a court would have had under R. S., 1930, Chap. 145, Sec. 13 (now R. S., 1944, Chap. 134, Sec. 13) if the jurisdiction over juvenile delinquency included any indictable offenses.

To get the complete historical picture in the record, it should be noted that P. L., 1943, Chap. 322, Sec. 2 deleted the paragraph restricting the authority of municipal courts to hold a child of juvenile age for a grand jury and declared such a power in terms of an express grant, by writing the words "holding such child for the grand jury or" into what is now R. S., 1944, Chap. 133, Sec. 6 immediately following the word "including" which closes the provision construed. Simultaneously it purported to enlarge the jurisdiction of municipal courts over juvenile delinquency by rewriting the definition of such jurisdiction and providing that when such courts were exercising it they should be "known as juvenile courts." P. L., 1943, Chap. 322, Sec. 1. That the enactment did not enlarge the jurisdiction, because the language used was inept, is of no importance.

It does not seem to me that it can be doubted that criminal jurisdiction involves both the adjudication of guilt and the imposition of appropriate punishment. P. L., 1931, Chap. 241, in its original form, and as amended from time to time, has always contemplated that the jurisdiction vested by Sec. 1 (now the second paragraph of R. S., 1944, Chap. 133, Sec. 2) should be exercised by an adjudication of guilt of juvenile delinquency, under that section, and the imposition of punishment under Sec. 4 (now R. S., 1944, Chap. 133, Sec. 6), if, but only if, the power in that regard seemed adequate for the purpose. Otherwise, it has been contemplated, at all times, as the opinion recognizes, that:

> "(under certain conditions) juvenile offenders * * * should be dealt with as criminals and made amenable and accountable to the rigors of the criminal law."

The clearest declaration in that regard is carried in the 1943 law already cited, where the power of a municipal court to hold a child for a grand jury is stated in terms of an express grant.

As the law stood at all prior times, the purpose that grant was designed to accomplish could not have been accomplished by repealing the restriction on the authority of a municipal court to hold a child for a grand jury to cases involving offenses that were aggravated. All the authority of a municipal court to hold anyone for a grand jury was then stated in R. S., 1930, Chap. 145, Sec. 13 (now R. S., 1944, Chap. 134, Sec. 13), the closing mandate of which is that if an offense is within the jurisdiction of a magistrate (a term including municipal courts and trial justices):

> "he shall try it and award sentence thereon."

Writing the power of a municipal court to hold a child for a grand jury in terms of an express grant must have indicated legislative intention that a municipal court having exclusive original jurisdiction over an offense, limited to finding him guilty of juvenile delinquency and punishing

him as a juvenile delinquent, might terminate such jurisdiction by refusing to impose a limited punishment and by exercising, simultaneously, jurisdiction over the child, as distinguished from his alleged offense, in ordering him held for a grand jury, under bail.

The result reached in the opinion is accomplished by declaring that the provision construed imposes a jurisdictional requirement on the power to hold a child for a grand jury, rather than its power to impose bail. The course of reasoning by which it is accomplished is not made apparent. The opinion indicates that the provision imposes no jurisdictional requirement on the power to commit a child to a correctional institution, or that, if it does, the requirement is satisfied by necessary implication in exercising the power to commit. It cannot be doubted that when the provision was written into our law it related to nothing except the power to commit. The power to which the opinion finds that it relates exclusively was granted as an alternative to that power, and involves the exercise of no jurisdiction, within the ordinary meaning of that word, except that of imposing bail. Whenever the power to hold a child for a grand jury is exercised by any court having the power to take such action, its effect, undoubtedly, is to terminate all the jurisdiction of the court exercising it.

I digress to note that it is within the judicial knowledge of the court that for many years, if not at all times since the enactment of P. L., 1931, Chap. 241, children committed to our correctional institutions under its provisions have been committed by the use of printed mittimuses supplied by such institutions, or the administrative body which governs them. The forms so supplied require the courts to declare that there has been an adjudication of guilt of juvenile delinquency, but make no reference to the interests of the child or the protection of the community as the basis for the commitment. In all probability every child now held in such an institution under a commitment of a munici-

pal court is held under that form of *mittimus*. It is obvious that if the law establishes a jurisdictional requirement applicable to one of the powers vested in terms of an express grant following the provision, it must be equally applicable to each and every other such power. If that is so, a child committed in disregard thereof and now restrained of his liberty thereby is restrained as unlawfully as the opinion finds the Petitioner to be. This possibility is sought to be cleared in the opinion, as I read it, by declaration that in the limited field of commitments, the requirement is supplied by the "necessary implication" of a record. Why it is not supplied as effectively when a child is ordered held for a grand jury as when he is committed is not stated.

The implication, perhaps, is that it is satisfied by an adjudication that the child is guilty of juvenile delinquency, but reference to the law will show that this is not so and cannot be so. The only power vested in a municipal court to punish a child on the basis of such an adjudication, without more, is to place him on probation in some form. This has been true at all times since the enactment of P. L., 1931, Chap. 241.

The decision is not supported by the citation of any authority. Eminent jurists and lawyers have been writing on juvenile delinquency and juvenile delinquency courts for more than half a century. Juvenile courts have been in operation in many states for many years. There must be a multitude of cases construing laws establishing them. Yet notwithstanding the undoubted great bulk of writings and decisions, no case or writing is cited declaring, or advocating, a jurisdictional requirement for terminating an exclusive original jurisdiction over juvenile delinquency. Neither is there any such citation for construing a juvenile delinquency law as requiring, or even permitting, a court vested with exclusive original jurisdiction over juvenile delinquency to adjudicate guilt thereof and simultaneously transfer jurisdiction on that issue to a higher court. The

same thing is true with reference to the particular language involved. Neither a decided case nor a legal periodical is said to have declared or suggested, heretofore, that a jurisdictional requirement could be or should be found imposed on any court by a requirement limiting its action to what, to it, *seemed best*. It seems the worst kind of sophistry to me to say that a court empowered to take any one of several actions which may seem best to it must in exercising one of them make a record that it does so because it seems best. I am in entire accord with the declaration or implication of the opinion that if the provision restricts a municipal court to take the particular action among those authorized which may seem best to it, the taking of it carries the necessary implication that it does. The place where I disagree with the opinion is that I think it is as clearly and necessarily implied in holding a child for a grand jury as it is in committing him to a correctional institution.

A jurisdictional requirement, as that term is generally understood, operates to prohibit a court from exercising a power to sentence a person or subject him to bail, without compliance with it. I have never known the term to be applied heretofore to a refusal to exercise jurisdiction over an offense and hold the person accused of it for a higher court. My point is illustrated by *State* v. *Hartwell,* 35 Me. 129, cited in the opinion, where the validity of a recognizance was in issue. An exercise of jurisdiction over the person, as distinguished from the offense alleged against him, was undoubtedly involved, and the recognizance was held ineffective. The issue here has nothing to do with the effectiveness of the bail the petitioner was ordered to furnish.

I cannot be certain that the opinion declares an additional jurisdictional requirement because the particular term is not applied. It seems apparent, however, that it declares a formal hearing in a municipal court a necessary preliminary to holding a child for a grand jury. It makes no ref-

erence to R. S., 1944, Chap. 133, Sec. 24, which is a part of the chapter carrying the section of law in which the provision is contained, and has been at all times since our municipal court law was revised by P. L., 1933, Chap. 118. The express provision of that section is that in:

> "all prosecutions before municipal courts * * *, the respondent may plead not guilty and waive a hearing."

Why this is not applicable to the present case is not stated. It seems obvious that a municipal court is authorized to find a child guilty of juvenile delinquency, without a hearing, on his plea of guilty, and that it may commit him to a correctional institution, without a hearing, on such a plea. The opinion does not negative either procedure. I see no reason why it may not hold a child for a grand jury without a hearing if the child waives it, particularly when, as the record before us shows, he is represented by counsel in the municipal court. The record makes it apparent that the petitioner was represented there by the same able counsel who is prosecuting this petition. It cannot be doubted that the waiver was made as a considered action in the interests of the petitioner, or that it carried recognition that the inevitable result of a hearing would have been the holding that was ordered without one, on his waiver. No substantial right of the petitioner was prejudiced thereby.

The opinion carries many references to juvenile courts and to the necessity that our municipal courts in proper cases should act as juvenile courts, as well as to juvenile delinquency laws. It seems to ignore the facts that Maine has no juvenile courts and that it has not had a juvenile delinquency law except as part and parcel of our municipal court law since P. L., 1933, Chap. 118 incorporated the provisions of P. L., 1931, Chap. 241 into our municipal court law. The Legislature which enacted P. L., 1931, Chap. 241 rejected an act to establish a system of juvenile courts and gave us that law in its stead. See the Legislative Record

for 1931 and particularly the act in question, Legislative Document No. 236, and the legislative action thereon.

In this case it is undoubted that the Portland Municipal Court was vested with power to hold the petitioner for a grand jury and that it purported to do so. It could have done so and placed the petitioner under effective bail under R. S., 1944, Chap. 133, Sec. 6, if the offense with which he was charged was within its jurisdiction, and under R. S., 1944, Chap. 134, Sec. 13, if it was not. The record before us shows clearly that it did not purport to act under the latter law, within the principle declared in *State* v. *Hartwell, supra*. The inference is strong that it purported to act under the former and that the refusal of its judge to "exercise jurisdiction over the offense," charged in the complaint on which it was acting, was a refusal to adjudicate that he was guilty of juvenile delinquency and impose any punishment a municipal court was empowered to impose, accompanied by the decision that it seemed best under the circumstances to exercise jurisdiction over the person instead of the offense and hold the petitioner for the grand jury under bail. Assuming that the provision established a jurisdictional requirement to the imposition of effective bail, I can see no reason why the decision of the court to terminate its jurisdiction should not be recognized.

Before calling attention to one circumstance that should not be overlooked, I must refer casually to the construction placed on the phrase "any term of years." It seems to me that the construction placed on it might be proper under the principle of liberal construction applicable to such laws as those providing limited punishment for juvenile delinquency, but such principle has never been declared applicable, so far as I know, to any particular phrase in a statute. It is applicable to statutes as a whole, and has been recognized in decided cases involving juvenile delinquency laws. It has never been applied in my knowledge in a manner that would infringe on another well established

principle of statutory construction requiring that statutes in derogation of common law should be strictly construed. It would be one thing to construe it in a manner which would enlarge the exclusive original jurisdiction of a court to deal with juvenile delinquency if such jurisdiction was one, as I believe it has always been intended by our legislature that it should be, which was terminable by action of a municipal court in holding a child charged with a serious crime for grand jury action.

The sequence of past events is entirely plain. The petitioner feloniously and wilfully committed a homicide on November 20, 1949. He was taken before the Portland Municipal Court, charged with that offense, on November 22, 1949. That court, having the authority to hold him for a grand jury, purported to take that action. He was tried and convicted in the only court which can ever try him for it as a criminal. He is restrained of his liberty under a sentence imposed in that court. The current event is that he is to be discharged therefrom forthwith. For future events the opinion offers nothing except complete uncertainty. It contemplates, probably, that new proceedings will be instituted to impose corrective treatment on the petitioner for juvenile delinquency or punish him for manslaughter, whichever he may deserve. Such proceedings must be commenced in the court which purported to hold him for the grand jury when complaint was made to it heretofore. That court had power to adjudicate his guilt of juvenile delinquency and subject him to corrective treatment, or hold him for the grand jury, that it might be determined in the only proper manner whether he had committed a crime which should be punished as such. It did not find him guilty of juvenile delinquency. It imposed no corrective treatment. The opinion does not say what the court should have done to hold the petitioner for the grand jury effectively. It does not construe the law except to declare that what was done was not effective. It furnishes no guide to future action for our courts or our prosecuting attorneys.

What effect, if any, are the events of the past to have on the future? The opinion does not say. The Kentucky Court in *Tabbutt* v. *Commonwealth,* 179 S. W. 621, in setting aside a conviction in a court which would have had jurisdiction of the offense charged against a child, if proceedings had been instituted in the court of original jurisdiction (which was a juvenile court) and appropriate action had been taken therein to terminate such jurisdiction, declared expressly that the proceedings set aside would not constitute a bar to new proceedings in either the juvenile court, or the higher court, if the original jurisdiction of the juvenile court was terminated. In that case, as in *Ex Parte Parnell,* 200 Pac. (Okla.) 456, and *Fifer* v. *State,* 90 Tex. Cr. R. 282; 234 S. W. 409, the jurisdictional requirement involved was age, something far different from what might *seem to be best.* Yet in the last cited case it was held that even an age requirement might be waived in a court trying the child as a criminal if the waiver was made on the advice of counsel, as was the case with this petitioner. In each and every one of the cited cases the decision related to proceedings in a higher court commenced without prior proceedings in the court of original jurisdiction.

Is there a principle of law applicable to offenses over which municipal courts have a complete jurisdiction similar to that involving double jeopardy? What is the future of one convicted of crime in a criminal court, sentenced to a punishment the court has no jurisdiction to impose, and discharged therefrom on *habeas corpus?* Is a municipal court entitled to two chances to find a child guilty of juvenile delinquency for a single act? or to hold him for the grand jury? These are questions that will confront this court if and when the petitioner is called upon to answer to a new complaint. If a hearing is a jurisdictional requirement and cannot be waived, what is the situation to be when a child not only waives one but insists on his right not to participate vocally in one on the ground of his constitutional right not to give evidence which might incriminate him?

144

Many more questions may arise when a new attempt is made to prosecute the petitioner. The result can be that he will neither be subjected to corrective treatment nor punished. For that result, if it comes, I deny the responsibility of the Eighty-fifth Legislature. That is the particular purpose of this dissent.

The responsibility is a judicial one, accomplished by an unusual combination of liberal and strict statutory constructions of separate parts of a single law. Each operates for the benefit of one who stands in the position of a convicted felon, after proceedings in the two courts and the only two courts where prosecution of him was or is possible. I believe the construction erroneous and that our municipal court law, as a whole, should be construed liberally to give the maximum power and authority to our municipal courts to clear children from punishment for offenses, and records declaring them criminals, in all cases where it seems to the court that corrective treatment may accomplish its intended purpose, or, in the alternative, to permit them to hold children for a grand jury, without fetters of any kind, when it seems that that is not so.

\* \* \* \* \*

CONCURRING.

MERRILL, J. While I heartily concur in the majority opinion of the court, because of the dissenting opinion, I feel that it is my duty to set forth at length certain fundamental reasons which underlie some of the conclusions tersely and I believe correctly stated in the majority opinion, and which require my concurrence therein.

Important as the result of this case is to the petitioner, and it cannot be denied that it is of the utmost importance to him, the determination of the fundamental principles of law upon which it must be decided and the application of the same to his case are even more important to the State itself.

It is a fundamental principle of law that no accused may be tried in, or sentenced and committed by a court that does not have jurisdiction over the offense with which he is charged and over his person. Lacking such jurisdiction the court is without legal right, authority or power to try, sentence or commit the accused. Lacking such jurisdiction, no matter how fairly and impartially the proceedings may be conducted, no matter how scrupulously the legal requirements and other safeguards applicable to trials of persons charged with the commission of crime may have been complied with, no matter how clearly the respondent's guilt may appear from the evidence presented in the proceedings, no matter how just the sentence may seem to be, the respondent has not had *the trial nor has he been convicted* as required by the organic law of this State.

The only concern of this court in this case, as in every other case, is that the decision thereof is in accord with law. If the petitioner, as held by this court and so declared in the majority opinion was tried in, sentenced by and is now imprisoned under an order of commitment issued from a court without such jurisdiction it is our duty to so declare and order the writ of habeas corpus to issue. In arriving at our decision the ultimate question for our consideration is the legality of the imprisonment of the petitioner. In arriving at our decision of that question we are not concerned, except as it may affect the jurisdiction of the trial court, with the magnitude of the offense with which the petitioner was charged. As well said by the Supreme Court of Alabama in *Seay* v. *State,* 93 So. (Ala.) 403:

> "But the law should prevail, without any reference to the magnitude or brutality of the offense charged. No matter how revolting the accusation, how clear the proof, or how degraded, or even brutal the offender, the Constitution, the law, the very genius of Anglo-American liberty demand a fair and impartial trial."

Although that declaration of the Alabama court was made with respect to the conduct of a trial within the juris-

diction of the trial court, it is equally applicable to the situation when an accused is tried before a court which is not clothed with jurisdiction over the offense with which he is charged and over his person. No man can have a fair and impartial trial save in a court clothed with such jurisdiction. Such is the law of this State. By undergoing such a trial the accused has not even been in jeopardy. As we said in *State* v. *Boynton,* 143 Me. 313; 62 Atl. (2nd) 182, 187:

> "Former jeopardy does not exist unless the previous trial was before a court of competent jurisdiction. State v. Slorah, 118 Me. 203, 106 A. 768, 4 A. L. R. 1256; State v. Elden, 41 Me. 165. Trial and conviction or trial and acquittal before a court without jurisdiction do not prevent another prosecution for the same offense."

Even though it is of the utmost importance to the individual that he be tried and sentenced only by a court of competent jurisdiction, it is of far greater importance to the State itself that this principle of law be scrupulously maintained. Unless so maintained, the fundamental guaranties vouchsafed to us by the Constitution of this State in Article I, Par. 6, that no accused shall "be deprived of his life, liberty, property or privileges but by judgment of his peers or by the law of the land" are but meaningless words. It is a fundamental principle of the law of the land that no man can be tried before, sentenced by, or committed in consequence of a sentence of a court which did not have jurisdiction over the offense with which he is charged as well as over his person. Such is the law of this State.

Before discussing the specific question of whether or not the Superior Court in this case had jurisdiction over the offense with which the petitioner was charged and over his person, it is necessary to examine the basic principles of public policy which underlie the special treatment of juvenile offenders under our statutes.

The special treatment of juvenile offenders is not a personal privilege extended to them to enable them to escape the rigors of the punishment for crime meted out to adult offenders. Its purpose is to deflect their feet from the crooked paths of the wayward, to return them to the highway of rectitude, to enable them to conduct themselves properly during minority, and to rehabilitate them so that they may become in manhood the good citizens of the future. Important as this may be to them, it is of far more importance to that society at large which we term the State. The quality of the State of the future depends upon the quality of the citizenry which is turned into its bloodstream. The boy of today is the man of tomorrow. Just as we cannot foretell the ultimate effect of a virulent germ or virus introduced into the bloodstream of the body, so we cannot foresee the effect of turning a criminal-minded citizen into the bloodstream of the body politic. Just as preventive medicine has gone far in assuring the health of the body and has reduced to a minimum scourges which ravished the peoples in the past, it is now hoped that preventive treatment applied to juvenile offenders may reduce the prevalence of crime that in recurrent waves, like the plagues of the past, attacks, undermines, and if not checked will endanger and injure, if not ultimately destroy, the body politic.

Juvenile delinquency, as the term is used in its broadest sense, including crimes committed by juveniles, is one of the crying evils of the day and as such presents a challenge which must be met.

One of the methods devised and employed to meet the challenge of this evil is special treatment of juvenile offenders. Instead of treating them as criminals, the State as *parens patriae* takes them into protective custody and seeks to cure their criminal tendencies and rehabilitate them, to the end that they may become the good citizens of tomorrow. To enable it, so far as possible, to reach this de-

sired end, exclusive original jurisdiction is conferred upon the municipal courts of this State over certain offenses committed by juveniles under the age of seventeen years. By conferring upon such courts exclusive original jurisdiction of such offenses, the State assures in its own interest as well as in the interest of the juvenile offender, that every juvenile charged with an offense which is within the exclusive original jurisdiction of such court shall be brought in the first instance before such tribunal, and that such court, acting in its capacity as a juvenile court, shall judiciously determine the disposition that shall be made of such child. Such required judicial action with respect to the disposition of the child includes the determination of whether or not the child is to be treated merely as a juvenile delinquent or whether he is to be subjected to criminal prosecution. If it seems best for the interests of the child and for the protection of the community, the juvenile court may hold the child for the grand jury, which body may formally present him for the commission of the offense. R. S., Chap. 133, Sec. 6.

With respect to such offenses as are within the exclusive original jurisdiction of the municipal court acting as a juvenile court, such preliminary determination by it, acting within such jurisdiction is essential, and unless and until it is made, the Superior Court has no jurisdiction to try, sentence or commit a juvenile therefor. A prosecution on an indictment returned to the Superior Court without such preliminary exercise of jurisdiction by the municipal court acting as a juvenile court is the exercise by the Superior Court of original jurisdiction. *State* v. *Elbert*, 115 Conn. 589; 162 Atl. 769. See also *Ex Parte Albiniano*, 6 Atl. (2nd) (R. I.) 554.

It is in recognition of the foregoing principles of public policy that juvenile courts have been established in most, if not all, of our states. To carry that public policy into full effect it has been recognized that it is necessary to

clothe the juvenile court with exclusive original jurisdiction over such offenses committed by juveniles as in the opinion of the legislature may be treated as juvenile delinquency. This is true whether the juvenile court be a separate court or whether juvenile jurisdiction be conferred upon an already existing court. The offenses over which the exclusive original jurisdiction has been conferred upon juvenile courts varies in the different states which have adopted the system. In some states all crimes, including even those punishable by the infliction of the death penalty, have been so committed to the juvenile court. In others, only those crimes punishable by death or imprisonment for life are excluded, but in almost all states the juvenile courts are given exclusive original jurisdiction over serious felonies. The majority opinion correctly interprets the extent of such jurisdiction conferred upon municipal courts in this State.

Recognizing the broad principles of public policy which underlie the juvenile court acts, the great weight of authority is that the exclusive original jurisdiction conferred upon the juvenile court is a true jurisdiction, as distinguished from a mere privilege extended to the juvenile. That this is so is established by decisions which hold that failure to institute proceedings therein for offenses within the exclusive original jurisdiction of the juvenile court is fatal to a trial, conviction and sentence in the criminal courts. There are many cases in which convictions for very grave offenses have been set aside on appeal, or the convicted juvenile discharged from imprisonment on habeas corpus for failure to take the juvenile before the juvenile court in the first instance, and included are many cases where the age of the juvenile was first raised either on the appeal or in the habeas corpus proceedings. Examples may be found in *Clark* v. *Commonwealth,* 256 S. W. (Ky.) 398 (appeal, murder). *Talbott* v. *Commonwealth,* 179 S. W. (Ky.) 621 (appeal, malicious wounding and cutting). *Watson* v. *Commonwealth,* 57 S. W. (2nd) (Ky.) 39 (appeal, manslaughter). *Powell* v. *State,* 141 So. (Ala.) 201 (appeal,

150

rape). *Sams* v. *State,* 180 S. W. (Tenn.) 173 (carrying concealed weapons—motion in arrest of judgment). *Wilson* v. *State,* 82 Pac. (2nd) (Okl.) 308 (appeal, murder). *Ex Parte Powell,* 120 Pac. (Akl.) 1022 (habeas corpus). *Ex Parte Hightower,* 165 Pac. (Okl.) 624 (habeas corpus, charge murder, conviction manslaughter). *State* v. *Alexander,* 196 Pac. (Okl.) 969 (appeal by State to quashing charge of murder). *Ex Parte Parnell,* 200 Pac. (Okl.) 456 (habeas corpus, larceny). *Ex Parte Alton,* 262 Pac. (Okl.) 215 (habeas corpus, larceny). *Ex Parte Humphries,* 237 Pac. (Okl.) 624 (habeas corpus, burglary). In one of these cases failure of the record on appeal to disclose proceedings in the juvenile court was sufficient ground for sustaining the appeal. *Watson* v. *Commonwealth, supra.* In *Talbott* v. *Commonwealth, supra,* it was stated "the circuit court has jurisdiction only to indict and try juvenile offenders when they have been transferred to that court *in the manner authorized by statute."* (Emphasis mine.)

In Louisiana, the juvenile court has exclusive original jurisdiction over manslaughter but not over murder, The Louisiana court held that the conviction of manslaughter of a juvenile charged with murder and who had not previously been before the juvenile court could not be sustained and amounted only to a verdict of not guilty of murder, and that the child was still subject to proceedings before the juvenile court based upon manslaughter as juvenile delinquency. *State* v. *Dabon,* 111 So. (La.) 461. It is to be noted, however, that a contrary result was reached by the Tennessee court in *Howland* v. *State,* 268 S. W. (Tenn.) 115, which holds that if a juvenile is properly indicted for murder, that crime not being within the jurisdiction of the juvenile court, the jurisdiction of the criminal court having attached, it attached for all purposes and the juvenile could be convicted of the minor included offense. This question not being before us, no opinion upon it is either expressed or intimated by calling attention to these latter cases.

In some states, Illinois for instance, jurisdiction over criminal offenses is specifically conferred upon certain courts by constitutional provision. In such states it is held that the legislature is without power to confer exclusive original jurisdiction over offenses upon juvenile courts. *People* v. *Lattimore,* 199 N. E. (Ill.) 275. In the case of *Ex Parte Mei,* 192 Atl. 80, the New Jersey court held that its constitution prevented original exclusive jurisdiction over the crime of murder being conferred by the legislature upon juvenile courts. The effect of this decision, however, has been modified with respect to crimes other than murder in the later case of *State* v. *Goldberg,* 11 Atl. (2nd) (N. J.) 299 affirmed in *State* v. *Goldberg,* 17 Atl. (2nd) 173.

Some may question the authority of the foregoing cases on the ground that the statutes in the states where rendered materially differ from our own. It may be objected that in some, if not all of those states, the jurisdiction over juveniles is committed to separate distinct juvenile courts. It may be further objected that in these cases the juvenile had not been taken before the juvenile court prior to the institution of criminal proceedings either by indictment or information filed in the criminal courts. All of these so-called differences may exist, but the fundamental reasoning upon which these cases are decided is not merely that the juvenile had not been taken before the juvenile court, but that there had been no exercise of the exclusive jurisdiction possessed by the juvenile court to determine that the juvenile should be prosecuted as a criminal. As will be hereinafter set forth, it is the exercise of jurisdiction by the juvenile court, not the mere taking of the juvenile before it which is required. This is just as essential in the case of a single court which possesses dual jurisdiction over juveniles and adults, as it is in the case of a separate juvenile court. Also, as will hereinafter be shown, if the juvenile be taken before a court of dual jurisdiction and held for the grand jury, it is essential that the record show that the court exercised its exclusive original jurisdiction and that

it was in the exercise thereof that it so disposed of the juvenile.

The creation of juvenile courts and the special treatment of juveniles in a manner unknown to the common law has been of gradual development. As stated in the Twelfth Edition of Wharton's Criminal Law published in 1932, Vol. 1, Page 485:

"These courts have not come quietly into existence without strong opposition both from criminally inclined juveniles and from that class of 'conservative' lawyers whose footsteps are guided entirely by the light of the past, - - by the glimmer of the dying torch of the Dark Ages, who are guided by 'precedent' rather than by principle, and are ever found planted in the pathway of civic advancement. But these laws have, in the main, been upheld; and where not upheld, it was due to defect in drafting the act, and not to the fact that the principle upon which such courts rest is disapproved."

The attitude towards juvenile courts has gradually changed. As said in the February 1950 issue of the Journal of the American Judicature Society:

"Fifty years ago a revolutionary preventive device was created in the field of crime by the establishment of courts to deal with juvenile delinquents. The full flowering of this device has been at a slow pace, but the hour has at last arrived when the leaders of the profession are beginning to know where we are heading. They not only have sighted the target but are preparing actively to promote what appears to be necessary revisions of statutes, court procedures and practice."

Maine has adopted the principle of preventive treatment of crime with respect to juveniles, yet in so doing it has also recognized that there are cases where juveniles must be subjected to criminal prosecution. Our juvenile court system and the method of its administration, including the power of municipal courts acting as juvenile courts to hold juveniles for criminal prosecution, is found in R. S., Chap.

133, Secs. 2 to 7, both inclusive, and the amendments embodied in P. L., 1945, Chap. 63 and P. L., 1947, Chap. 334. It is the duty of this court to see that the provisions of this law are given full effect. To this end we must by our decisions scrupulously enforce the provisions of the juvenile law which require that before a juvenile can be tried as a criminal for an offense within the exclusive original jurisdiction of the municipal court, in its capacity as a juvenile court, that the required proceedings be had in said court, and then only after that court has determined in the manner provided by the law that such criminal proceedings be had. I do not feel that any justice of this court disagrees with this conclusion. The difference of opinion which obtains among the members of the court is not so much with respect to the basic principle which requires action by the municipal court as a condition precedent to the indictment of a juvenile for an offense within its exclusive original jurisdiction, but with respect to what action the municipal court must take if it holds the juvenile for the grand jury, and whether or not it took the required action in this case.

If public policy and legal jurisdictional requirements prevent the prosecution of a juvenile for an offense in the criminal courts, unless and until proceedings have been instituted in the juvenile court possessed of exclusive original jurisdiction over such offense, the same principles of law and the same public policy require that the juvenile court exercise the jurisdiction which it possesses. It is not the mere taking of the juvenile before the juvenile court which is important. A *judicial determination* by the juvenile court of the disposition to be made of the juvenile delinquent, such determination being made in the exercise of its jurisdiction as such, is what is required. If when a juvenile is brought before the juvenile court charged with an offense within its exclusive original jurisdiction, such court be allowed to refuse to take jurisdiction of the offense and be allowed to proceed in the same manner as in the case of an adult, the spirit, purpose and letter of the juvenile law

are violated and defeated. There is no difference in legal effect between taking a juvenile before a juvenile court which wrongfully refuses to exercise jurisdiction and an omission to take the juvenile before such court. Neither course is sufficient to enable the Superior Court to exercise jurisdiction over the juvenile and the offense with which he is charged.

It is the *exercise* of exclusive original jurisdiction by the juvenile court not its refusal to exercise it that confers jurisdiction upon the Superior Court to try a juvenile offender for an offense within the exclusive original jurisdiction of the juvenile court.

Neither in the juvenile court nor in the Superior Court may the juvenile waive the exercise by the juvenile court of its exclusive original jurisdiction. To allow such waiver by the juvenile in either court would be against public policy and the law respecting jurisdiction. As above stated, compliance with the requirements of the juvenile law is jurisdictional in the strict sense of that term. Until such requirements are complied with, the Superior Court has no jurisdiction over the offense or the juvenile. Jurisdiction cannot be acquired by express consent and a waiver can amount to no more. *State* v. *Bonney,* 34 Me. 223. Not only sound legal reasoning, but the weight of authority as well, supports this doctrine with respect to waiver in juvenile delinquency cases. *Talbott* v. *Commonwealth,* 179 S. W. (Ky.) 621, *Ex Parte Parnell,* 200 Pac. (Okl.) 456, *Ex Parte Albiniano,* 6 Atl. (2nd) (R. I.) 554. As said in the latter case where the question was first raised in a habeas corpus proceeding:

> "The state also urges that the petitioner waived any right he may have had to attack the validity of the indictments on the ground of his age, because he permitted himself to be arraigned before the superior court on said indictments and voluntarily pleaded thereto, without then raising any question regarding his age. The state's contention in this

connection is supported by authority which rests, in substance, on the theory that, while one under a certain age may have a legal right to be proceeded against in a juvenile court when accused of crime, yet such right may be waived, under the proper circumstances, by the conduct and acts of the accused; and he may consent to stand trial and take sentence in the same manner as an adult. See Fifer v. State, 90 Tex. Cr. R. 282, 234 S. W. 409.

Granting that the above holding as to waiver is the law in certain other jurisdictions, we find ourselves unable to adopt such holding because of our view of the meaning and intent of the statute we now have under consideration. We construe our statute providing for juvenile courts and the care of delinquent children as establishing certain jurisdictional limitations and requirements, and not merely personal rights or privileges in favor of a juvenile, which the latter may waive or not as he desires. Jurisdiction in proceedings such as are involved herein cannot be conferred on the superior court by the conduct of the accused minor, but depends upon the proper construction of the statute as applied to the facts then before the court. We find, therefore, that this contention advanced by the state, that the petitioner by his conduct waived certain rights, has no application in the present case."

The cases to the contrary in Texas and California are based upon statutory requirements which set forth the manner and time for raising the issue. Because of these requirements the courts in these states held that preliminary proceedings in the juvenile court were a personal privilege of the juvenile and were not strictly jurisdictional requirements and that they could be waived by failure to raise the issue at the time and in the manner provided by statute.

Notwithstanding the fact that R. S., Chap. 133, Sec. 24 provides,

"In all prosecutions before municipal courts or trial justices the respondent may plead not guilty and

> waive a hearing, whereupon the same proceedings shall be had as to sentence and appeal as if there had been a full hearing.",

this provision of the statute in my opinion does not relieve the municipal court from its duty to exercise the exclusive original jurisdiction which it has over a juvenile offender. It is to be noted that in this case it is stipulated that the judge of the municipal court after plea of not guilty "refused to exercise jurisdiction over the offense" with which the Defendant was charged and rendered judgment of "Probable Cause" and bound the respondent over to the Superior Court, etc. Even if the above statute permitting waiver of hearing before municipal courts applies to juvenile offenders, such waiver does not permit the municipal court to refuse to exercise its exclusive original jurisdiction over the offense and refuse to determine whether or not the juvenile is to be treated as a juvenile delinquent only, or held for criminal prosecution. To hold otherwise would permit the juvenile not only to waive the hearing but to waive the provisions of the juvenile law.

It must be borne in mind that although this particular case involves a juvenile sixteen years of age charged with manslaughter, the principles of law which we herein decide are applicable to his case may apply to all juveniles between the ages of seven and seventeen years, and will apply to all over twelve years of age and under seventeen, and to all offenses within the exclusive original jurisdiction of the municipal court. If the juvenile court can refuse to take jurisdiction or refuse to exercise its jurisdiction in the case of this boy, it can do the same thing in the case of a seven year old or a child of any of those intermediate ages, in which age group so many of the juvenile delinquents are found. It is to eliminate possibility of such action so at variance with the purposes of the act that it must clearly appear that, in holding the juvenile for the grand jury, the municipal court actually exercised its exclusive original

jurisdiction before we can sustain a sentence imposed by the Superior Court.

I agree with the majority opinion that manslaughter is one of the offenses within the exclusive original jurisdiction of the municipal court as a juvenile court. I also agree with the majority opinion that the Superior Court was without jurisdiction to try, convict, sentence or commit the petitioner because proper proceedings to hold the petitioner for the grand jury to enable his prosecution for the crime of manslaughter in the Superior Court were not had in the municipal court. The reasons for this latter conclusion are as follows:

The Superior Court is a statutory court. It has only such jurisdiction as is conferred upon it by statute. The jurisdiction of the Superior Court over offenses is conferred by R. S., Chap. 132, Sec. 5, which is as follows:

> "The superior court shall have original jurisdiction exclusive or concurrent, of all offenses except those of which the original exclusive jurisdiction is conferred by law on municipal courts and trial justices, and appellate jurisdiction of these."

Nor is this jurisdiction of the Superior Court enlarged by R. S., Chap. 94, Sec. 5, as amended by P. L., 1947, Chap. 16 which is its general grant of jurisdiction, because the jurisdiction of the Supreme Judicial Court over offenses prior to January 1, 1930 was limited by a statute similar to that limiting the jurisdiction of the Superior Court above quoted.

The petitioner being less than seventeen years of age and being charged with manslaughter, the municipal court, acting in its capacity as a juvenile court, had exclusive original jurisdiction over the petitioner and the offense with which he was charged. Therefore, the only way that the Superior Court could acquire jurisdiction over the offense with which the petitioner was charged was under the provisions of the so-called juvenile law and especially R. S., Chap. 133, Sec.

6.  Under this section the Superior Court could only acquire jurisdiction by an appeal or by an indictment returned by the grand jury in pursuance of and subsequent to the holding for the grand jury by the municipal court under authority conferred upon it by Section 6 *supra*.

The distinction between holding a juvenile and a non-juvenile for the grand jury for felony and the basis thereof is as follows:

In the case of the *non-juvenile* charged with a felony, the municipal court has no jurisdiction whatever over the offense with which the respondent is charged. R. S., Chap. 133, Sec. 2, Par. 1. It cannot make any final disposition with respect to the offense nor render any judgment either of innocence or of guilt. The non-juvenile respondent, if a felony be charged, is before it not for trial but for examination. R. S., Chap. 134, Sec. 9. It can find that the crime has been committed by someone and that there is probable cause to charge the respondent with its commission. If so, it causes him to be held for trial by requiring him to recognize to await action of the grand jury and answer to any indictment that may be found. R. S., Chap. 134, Sec. 13. If it fails to find *either* that the crime has been committed or that there is probable cause to charge the respondent, the respondent is discharged. R. S., Chap. 134, Sec. 13. This, however, is not to the slightest degree a determination of the guilt or innocence of the accused. The magistrate or municipal court has no jurisdiction over the offense, and if the respondent is charged or discharged he has never been in jeopardy. If discharged, he may be arrested on a new warrant and brought before the same magistrate again, and held for the grand jury. Even if charged, should the grand jury fail to indict, he may be again arrested on a warrant and brought before the same or another magistrate and again held for the grand jury. However, he is held for the grand jury because the magistrate has no jurisdiction over the offense and cannot make a final. disposition of the case.

On the other hand, when a juvenile is charged with a felony within the exclusive original jurisdiction of the municipal court, it does have jurisdiction to hear and try the case. It can make a final determination of the case, subject to the right of appeal. It can find the juvenile guilty of juvenile delinquency, and can then deal with the juvenile in any of the methods prescribed in Section 6 of the juvenile law. R. S., Chap. 133, Sec. 6. The constitutionality of the grant of such authority over offenses committed by juveniles is assured, even though the offense, if committed by a non-juvenile, would be a felony. The only adjudication or judgment of guilt that the municipal court can make is that the child was guilty of juvenile delinquency. All power to punish the child as a criminal by imprisonment, either in jail, reformatory or prison, is expressly negatived. R. S., Chap. 133, Secs. 2 and 6. Juvenile delinquency is not a crime. Section 2 *supra*. None of the dispositions that the municipal court can make of the juvenile amount to punishment for crime. However, when the municipal court deals with a juvenile charged with any offense over which it has exclusive original jurisdiction, it has to determine whether he is to be ultimately dealt with as a juvenile delinquent or a criminal. If, however, the municipal court determines that the best interests of the juvenile and the safety of the community require a criminal prosecution of the juvenile, it may hold him for the grand jury.

If it so determines it does so not because it had no jurisdiction over the offense, not because it could not make any final disposition of the cause, but because it has exercised the discretion of judgment as to disposition of the cause with which it was invested by Section 6 of the statute.

In holding the juvenile for the grand jury, the juvenile court does not act as a mere examining magistrate as in the case of a non-juvenile. In so doing it acts as a court clothed with jurisdiction over the offense and the juvenile authorized to make disposition of the juvenile. Holding him for

the grand jury is only one of the dispositions it may make of the juvenile. Such action by the juvenile court is no less a disposition of the juvenile in the exercise of its jurisdiction because it contemplates other and further action may be taken by the grand jury and the Superior Court.

When the municipal court holds the juvenile for the grand jury, unless it exercises the jurisdiction with which it has been invested and holds for the grand jury as an act of discretion under Section 6 the legal effect of such action is just the same as though the juvenile had never been before the court.

If the municipal court expressly ruled that it had no exclusive original jurisdiction over the crime of manslaughter committed by the juvenile and held for the grand jury, it would take that action because under its interpretation, except to discharge it could take no other action. It would fail entirely to exercise the judgment of choice with which it is invested in juvenile cases, and it would not hold for the grand jury because that course of action seemed for the best interests of the child and the safety of the community as provided under Section 6 of the statute.

Under such an interpretation of the statute, the municipal court would do just exactly what the record and the stipulation show that it did do in this case. It would refuse to exercise jurisdiction over the offense with which the juvenile was charged, and find Probable Cause and hold for trial.

It is common knowledge in the profession and it is well known to those of us who have served on the Superior Court subsequent to the enactment of P. L., 1947, Chap. 334, that there has been a lack of uniformity in the interpretation of the phrase "the punishment for which may be imprisonment for any term of years" by municipal courts. Some municipal courts have erroneously held that their exclusive original jurisdiction did not extend to offenses which might

be punishable by imprisonment for two years or more. Such municipal courts have therefore felt that the law required them to hold every juvenile charged with such an offense for the grand jury as the only disposition which they could make of a child so charged other than ordering him discharged. Such offenses include nearly all if not all felonies. It was to settle this question that in January, 1948, I reported the case of *State* v. *Fraizer*, 144 Me. 383; 64 Atl. (2nd) 179, from the Superior Court to the Law Court. However, upon a careful analysis of the indictment by this court it was found that the crime charged therein was within the provision of R. S., Chap. 118, Sec. 2 authorizing punishment by imprisonment "for any term of years" and not within that provision of said section which provided for imprisonment "for not less than one year nor more than ten years." As the question was not in issue and as any discussion thereof would have been *obiter dictum*, the case was disposed of by *per curiam*.

The majority opinion in this case settles this question of interpretation. Under the record and stipulation in this case it may well be that the Municipal Court of Portland erroneously interpreted the extent of its jurisdiction and held the petitioner for the grand jury because it felt that it was the only course of action it could legally take in the premises. The record alone is consistent with such action. The stipulation established that it refused, either for that or some other reason, to exercise jurisdiction over the offense with which the petitioner was charged. When dealing with juvenile offenders charged with offenses within the exclusive original jurisdiction of the municipal court, both the municipal court and the Superior Court are courts of limited jurisdiction. The jurisdiction of the Superior Court depends upon the precedent exercise by the municipal court of its exclusive original jurisdiction. It is for this reason that the record of the municipal court must show either by express declaration or by necessary implication that the municipal court has exercised its jurisdiction as a

juvenile court and that in the exercise thereof and of the discretion with which it is invested by Sec. 6 of R. S., Chap. 133, held the juvenile for the grand jury, before the jurisdiction of the Superior Court can attach.

I interpret the record and the stipulation as establishing that the Municipal Court of Portland in this case never exercised its exclusive original jurisdiction over the petitioner or the offense with which he was charged. The *record,* though not to be commended and open to criticism, if it is sufficient for any purpose, is consistent with such action. The *stipulation,* however, taken together *with this record* is conclusive with respect thereto. The statute gives the court exclusive original jurisdiction over the offense. The stipulation is that the "Judge of said Municipal Court then refused to exercise jurisdiction over the offense with which the Defendant was charged and rendered judgment of 'Probable Cause.'" To my mind this cannot mean that he exercised the jurisdiction with which he was invested, that he considered whether he would treat the accused as a juvenile delinquent and make a final disposition of the case *and the juvenile,* decided against that course and as an exercise of the discretion as to disposal of the case vested in him by Section 6, held the child for the grand jury because it seemed for the best interests of the child and the safety of the community. To my mind the record and the stipulation show that he refused to exercise this jurisdiction. The child was not properly held for the grand jury, and when the Superior Court tried and sentenced upon the indictment, it was exercising original jurisdiction over the offense, a jurisdiction that it did not possess.

To construe the provisions of Section 6 relating to holding a juvenile for the grand jury, as conferring upon the municipal court the unfettered right to hold a juvenile for the grand jury as in the case of an adult would in my opinion destroy the effectiveness of the juvenile law. It would open the door for municipal courts which wrongfully

construed the extent of their jurisdiction as a juvenile court as not covering any felonies to hold for the grand jury without consideration of the case as a juvenile case.

To my mind it is of the utmost importance not only to the juvenile but to the State itself that cases within the exclusive original jurisdiction of the municipal court as a juvenile court be first considered as juvenile cases and a legal determination made by that court whether it will finally dispose of them as such or, within the discretion with which it is vested by Section 6 of the juvenile law, hold them for the grand jury. In my opinion such action upon the part of the juvenile court is a prerequisite to an indictment by the grand jury which is cognizable by the Superior Court and to trial and sentence in that court upon an indictment. In my opinion this is the intent of the amendment in P. L., 1943, Chap. 322, which struck out the prohibition against holding for the grand jury "unless the offense is aggravated or the child is of a vicious or unruly disposition," and which expressly included holding for the grand jury among the dispositions that could be made as seemed to the court for the best interests of the child and for the protection of the community. The deleted prohibition had been in the law since its enactment in 1931. It had been interpreted by this court as excepting cases within its terms from the exclusive original jurisdiction of the municipal court. *State* v. *Rand and Henry,* 132 Me. 246. The amendment not only struck out the prohibition but it deleted the provision of the prior law which the court held excepted cases within its terms from the exclusive original jurisdiction of municipal courts. By doing this and giving the court authority to hold for the grand jury as it did and in the clause where it did, it is my opinion that the amendment of 1943 made holding for the grand jury one of the dispositions of the juvenile which the court could, in the exercise of its exclusive original jurisdiction, make of the juvenile.

In my opinion the record of the municipal court holding for the grand jury should be such that it shows either expressly or by necessary implication that it has taken the required action, and that it has held the child for the grand jury in the exercise of the discretion conferred upon it by Section 6 of the juvenile law and not under the authority conferred upon it by Section 13 of Chapter 134 as in non-juvenile cases.

It may be argued that as the municipal court, either acting under R. S., Chap. 133, Sec. 6 or under R. S., Chap. 134, Sec. 13, may hold for the grand jury, it makes no difference which route the case takes to arrive at the same destination and that this is a distinction without a difference. This argument is based upon a misconception of the functions of the municipal court and its jurisdiction when acting as a juvenile court. The confusion is due to the fact that in this State a single municipal court acts in a dual capacity and exercises a dual jurisdiction. If we had a separate juvenile court which had exclusive original jurisdiction over offenses by juveniles, it would be perfectly clear that that court would have the exclusive right to exercise such jurisdiction over the juvenile. If such court were given the authority to deal with the juvenile as a juvenile offender in the manner provided in Section 6, it would have to choose the disposition it made of the case from those authorized by that section. Such choice would have to be made in the exercise of its judicial discretion. Such choice would necessarily involve a consideration by the court of the various possible dispositions which could be made and the selection of the one to be carried out. It would only be in the exercise of this discretion of choice that the court could hold for the grand jury. It is the right of both the State and the juvenile that the court exercise this discretion and that the disposition actually made be chosen from among the various dispositions that it could make. It is only by this exercise of its discretion of choice that the court exercises the jurisdiction conferred upon it.

This is also true of our municipal court with its dual jurisdiction. When a juvenile is brought before it for an offense over which it has exclusive original jurisdiction, it must exercise that jurisdiction. If it would hold such child for the grand jury, it must exercise the discretion as to disposition which has been conferred upon it by Section 6. If it holds for the grand jury it can only do so acting within its jurisdiction and by virtue of the authority conferred by Section 6 as one of the dispositions it is authorized to make of the delinquent. If it fail or refuse to exercise its exclusive original jurisdiction it necessarily fails and refuses to exercise the discretion of disposition conferred upon it by Section 6. If it refuses to exercise jurisdiction over the offense and finds probable cause and holds the juvenile for the grand jury, as in this case, the only construction that can be placed upon such action is that it assumed to do so under the provisions of R. S., Chap. 134, Sec. 13. The legal effect of such action is exactly the same as though there were a separate juvenile court, a failure to take the juvenile before it, or if he were taken before it that court refused to act in the premises, and then without action by the juvenile court a prosecution was commenced by indictment.

As heretofore shown herein, in my opinion the record and stipulation in this case not only fail to show that the municipal court did exercise its jurisdiction as a juvenile court but show that it did not, and that it held the juvenile for the grand jury in the belief that such was the only action it could take in the premises. In my opinion the Municipal Court of Portland in this case never exercised its exclusive original jurisdiction over the offense nor over the petitioner. It treated the juvenile throughout as though it had no exclusive original jurisdiction over the offense or the right to treat the juvenile as a juvenile delinquent. It is my further opinion that in this case the juvenile was improperly held for the grand jury. A holding for the grand jury in accord with Section 6 is a condition precedent to jurisdiction in the Superior Court. This being true, the Su-

perior Court exercised original jurisdiction in trying and sentencing the juvenile. See *State* v. *Elbert, supra.* The commitment under such sentence is therefore illegal and there is no justification for the detention of the petitioner and the writ of habeas corpus should issue.

I realize that there are contingencies and situations which may arise in the administration of the present juvenile law which are not specifically or even by implication provided for therein. If so, it is for the Legislature not the Court to make the necessary revision of the law. To interpret a law in such a manner as to either read provisions into it which it does not contain or to read out of it those which it does contain is to legislate not to interpret. It may be possible, though not probable, that either lack of necessary action or improper action taken in the municipal court may enable some juveniles to escape well merited punishment. However that may be, in an attempt to avoid such result, this court should not by construction of the law permit a municipal court, by its refusal or neglect to exercise its exclusive original jurisdiction, to defeat the purpose of the law itself. It is further my opinion that the reasons which I have stated for my conclusions at length are implicit in the majority opinion of the court and I therefore concur therein.

WILLIAMSON, J. I concur in the opinion of Mr. Justice Fellows except insofar as it is susceptible of interpretation that an adjudication or judgment of "guilty of juvenile delinquency" is required before a child may be held for the grand jury. I concur in the result.

MURCHIE, C. J., further dissenting.

The concurring opinion of Mr. Justice Merrill having been written to set forth the fundamental reasons underlying the opinion from which my dissent is recorded, it seems proper for me to note that, despite my entire accord that the issue is most important and my complete recognition of the principle that trial in a court having no juris-

diction is meaningless, I cannot see that he has supplied the deficiencies of the principal opinion as I see them. That principle was declared by this court in *State* v. *Bonney,* 34 Me. 223. It is in accord with that controlling all the decisions cited from states having juvenile courts which have set aside convictions of children not taken before such courts, on appeal or by habeas corpus. Our own case, *State* v. *Bonney, supra,* presents a statute which vested an exclusive original jurisdiction that was final, except for appellate proceedings, R. S., 1840, Chap. 166, Sec. 2. Our court emphasized the fact that the Legislature had provided no machinery for the transfer of any case within it to another court. R. S., 1944, Chap. 133, Sec. 6 does provide such machinery. The court of exclusive original jurisdiction purported to use it. That cannot be said of any of the cases cited by Mr. Justice Merrill.

My views may be controlled, as the quotation from Wharton's Criminal Law intimates, by over-conservatism, but it is a conservatism which stems from recognition of the limitations intended to be placed on judicial power by our Constitution rather than from "the dying torch of the Dark Ages." Only legislative power, in my view, can establish a system of separate juvenile courts. That the court is exercising a legislative function, as distinguished from a judicial one, seems to be conceded in the statement made by Mr. Justice Merrill near the close of the third paragraph from the end of his opinion, that:

> "The legal effect of such action is exactly the same as though there were a *separate* juvenile court * * *."

The emphasis is mine. Our Legislature has refused to give us such courts. This court both declares and supplies the deficiency. Mr. Justice Merrill refers to what he calls the refusal of the Portland Municipal Court to exercise jurisdiction over the offense of the petitioner. Undoubtedly it refused to exercise its jurisdiction to adjudicate that the

petitioner in the killing with which he was charged was guilty of juvenile delinquency. Rightly so, in my view. Our Legislature has vested a considerable exclusive original jurisdiction over juvenile delinquency in our municipal courts, or the judges thereof, but has made it entirely clear, at all times, that children might be held for a grand jury *by such courts*. Granting the desirability of rehabilitating children whose feet have strayed to wayward paths, it has provided that children may be punished as criminals, when circumstances require such action, and has left to our municipal courts the determination whether a particular offense of a particular child should, or should not, be treated as an act of juvenile delinquency. I can understand why the State has an interest sufficient to deprive a child of the right to waive such a jurisdictional requirement as age, but not why a court would refuse one sixteen years of age, on the advice of able counsel, the right to recognize that the inevitable result of a municipal court hearing on a charge which might involve either juvenile delinquency or crime would be that the child would be held for the grand jury. What distinguishes our law seeking to salvage children from paths of crime from that of any other state is the express provision of the chapter which carries it that a hearing may be waived "in all prosecutions before municipal courts." R. S., 1944, Chap. 133, Sec. 24. Certainly when a child is indicted, after being held for a grand jury, it must be recognized that his prosecution started in the municipal court which had exclusive original jurisdiction of his alleged offense. It can hardly be a tenable view that "the broad principles of public policy which underly the juvenile court acts" (quoting Mr. Justice Merrill) of other states, assuming that all except Maine have recognized them, have imposed a constitutional limitation on legislative power in Maine which prohibits legislation providing that a child may waive a hearing of the issue whether a felonious and wilful killing charged against him constitutes nothing more than an act of juvenile delinquency.

It does not seem to me that Mr. Justice Merrill has made the future clear with reference to either the petitioner herein or children charged, hereafter, in our municipal courts, with crimes for which they should be prosecuted as criminals. There is intimation that the petitioner has no assurance against a new prosecution and that a municipal court, adjudicating that a child is guilty of juvenile delinquency, supplies all jurisdictional requirements for holding him for a grand jury by necessary implication. On the first point the statements do not seem conclusive because unlike one tried in a court having no jurisdiction of his offense, the petitioner has been arraigned in one which had. The issue as to whether he can be arraigned again can arise. On the second a single thought seems controlling. It seems entirely inconsistent to require a court to find a respondent guilty of an offense constituting juvenile delinquency as a preliminary to holding him for a grand jury that, if indicted, a traverse jury may determine his guilt or innocence. If a case arises hereafter, in which a child adjudicated guilty of juvenile delinquency and held for the grand jury is acquitted of the crime to which the adjudication related, the adjudication of guilt of juvenile delinquency will not be eliminated. In this connection I note the closing statement of Mr. Justice Baker of the Rhode Island Court in *Ex Parte Albiniano,* 62 A. (2nd) 554 at 558:

> "appropriate proceedings should be had * * * to clear the record * * *."

This court has no machinery by which in such a case the record can be cleared. It may be that a system of juvenile courts established by the Legislature would make provision for such a contingency. When courts legislate they have no power to provide therefor.