EBEN H. GOULD vs. BANGOR AND PISCATAQUIS RAILROAD
COMPANY.

Piscataquis.     Opinion November 19, 1889.

*Railroad. Lease. Fences. Injury to cattle. R. S., c. 22, § 1; c. 51, §§ 36, 37.*

A railroad corporation in possession and control of a railroad belonging to
another corporation, and operating it for its own benefit is bound, by R. S.,
c. 51, §§ 36 and 37, to keep the fence on the line of adjoining owners in good
repair, although the lease under which it claims is not lawful, as between
the lessor and lessee. The injured party may seek his remedy against the
corporation in control without first settling the legality of a lease in which
he has no interest.

Though the statute was intended to prevent the escape of cattle from the
adjoining land, it neither repeals nor modifies the common law principle
by which every person is bound so to use his own, or perform his obliga-
tions to others so as not unnecessarily to injure others.

The statute, though requiring a legal fence, does not authorize it to be built
of such material or in such manner as to be unnecessarily dangerous to
ordinarily docile animals rightfully upon the adjoining land, or through
neglect permit it to become so.

ON EXCEPTIONS and MOTION, to set aside the verdict by
defendants.

This was an action to recover for injuries which the plaintiff
claimed his colt received October, 1887, in his pasture, by reason
of want of repair of fence on the line of the railroad. It appeared
that the fence was on the line of the Katahdin Iron Works Ry.
and built by that company.

It also appeared, that in July, 1887, the Katahdin Iron Works
Ry. leased its railroad to the defendant company, which, after that
date, operated and had full control of the railroad under the lease,
which was not authorized by any act of the legislature.

The defendant contended that the defendant company was not
liable.

The presiding justice instructed the jury as follows :

"If you shall find for the plaintiff in other respects, then I
instruct you as matter of law, that the defendant is liable, although
it is not its road and it did not build the road or the fences ; for

it is admitted that the defendant company is in possession and full control of the road under a lease from the Katahdin Iron Works Ry. Whether that lease between the railroad companies was or was not lawful is of no consequence in this case. It is enough that there was a lease, and that defendant company was in full possession and control of the road under that lease. The law imposed upon this company, so long as it retained possession and control and operated it, the duty and obligation of keeping in proper repair the fences which had been erected upon either side of this railroad, across the plaintiff's pasture."

There was a verdict for plaintiff and the defendants excepted to these instructions.

*Charles P. Stetson, A. M. Robinson,* with him, for defendants.

The obligation to erect and maintain fences on the line of the railroad is by statute alone. *Rust* v. *Low,* 6 Mass. 90; *Little* v. *Lathrop,* 5 Greenl. 356; *Eames* v. *S. & L. R. Co.,* 98 Mass. 560; *Railroad Co.* v. *Skinner,* 19 Penn. St. R. 298; 1 Redf. Am. Ry. Cases, p. 347; R. S., c. 51, § 36; R. S., of 1857, c. 51; original statute, 1842, c. 6.

Statutes not obligatory upon this lessee, the legislature not having authorized the lease. Statute liability is upon the corporation building the railroad; which takes the land; which must make fences before it constructs the road; whose directors are liable, during the construction; the corporation liable to be indicted and fined. Lessor held liable when out of control and possession in lessee. *Whitney* v. *At. & St. L. R. R.,* 44 Maine, 366; *Estes* v. *Lane,* 60 Id. 309.

Cases cited in text books, holding both lessor and lessees liable, depend on different statutes. Lessee in case of *Clement* v. *Canfield,* 28 Vt. 303, cited by Redfield, held liable because an "agent" within the words of the statute. The Mass. cases are those of common carriers where liability is by common law, or lease authorized by legislature.

Purpose of our statute is to afford protection to passengers and property transported, and prevent cattle escaping from adjoining land on to the track. *Wilder* v. *Me. Cent. R. R.,* 65 Maine, 332. It does not give a right of action where animals are injured in

the pasture by attempting to escape or in kicking against the fence.

Fence legal and sufficient. R. S., c. 22, § 1.

Plaintiff virtually admits the injury was caused by the colt pawing against the fence. This was in the nature of negligence of the plaintiff. Railroad should not be held liable for injuries to animals caused by kicking or pawing on fences.

*Henry Hudson*, for plaintiff cited:

R. S., c. 51, §§ 36, 37; Public Laws 1842, c. 9, § 6; Public Laws 1853, c. 41, § 4, and *post;* Public Laws 1857, R. S., c. 51, § 23; R. S., 1871, c. 51, § 20; *Tracy* v. *Troy & Boston Railroad Company*, 38 N. Y., 433; *Detchell* v. *Spuyten Duyvil & Port Morris R. R. Co.*, 67 N. Y. 425; Redf. Railway, 6th ed., vol. I, pp. 514, 637, and cases cited 658; *Whitney* v. *At. & St L. R. R., Co.*, 44 Maine, 362; *Estes* v. *Same*, 63 Maine, 308; *Wyman* v. *Pen. & Ken. R. R. Co.*, 46 Maine, 162; *Wilder* v. *Me. Cent. R. R. Co.*, 65 Maine, 332; *Nugent* v. *B. & C. & M. R. R. Co.*, 80 Maine, 62; *Ingersoll* v. *Stockbridge & Pittsfield R. R. Co.*, 8 Allen, 438; *Davis* v. *Prov. & Worcester R. R. Co.*, 121 Mass. 134; *Broom's Commentaries*, 655, and cases cited; Thompson on Negligence, 1st ed., vol. I, page 509 and cases cited; *Clement* v. *Canfield*, 28 Vt. 302; *Illinois Cent. R. R. Co.* v. *Kanouse*, 39 Ill. 272; *Woodruff* v. *Erie Railway Co.*, 93 N. Y. 609; *McCluer* v. *M. & L. R. R. Co.*, 13 Gray, 124.

DANFORTH, J. The presiding justice ruled, in substance, that the defendant is liable, if the plaintiff has made out his case in other respects, though running the road under a lease not authorized by the legislature, if it was in full possession and control under that lease.

The objection made to this ruling, is that a railroad company is not bound to build a fence upon its lines, except as provided by statute; and that the statute obligation applies only to the company owning and building the road, or its legal successor. The first part of this proposition is undoubtedly true, as stated; the latter part requires some qualification. The obligation of railroad corporations in this respect, is found in R. S., c. 51, §§

36 and 37. Section 36 provides that "legal and sufficient fences shall be made   *   *   *   before the construction of the road is commenced, and such fences shall be maintained and kept in good repair by the corporation." This does not say what corporation. It certainly does not confine the obligation to the corporation building or owning. It does require the fence to be built before the road is, and its maintenance in good repair when in operation. The reasonable construction of the statute is, that the corporation building the road must see that the fence is made, and the corporation operating it must be responsible for its repairs. The party injured is authorized to seek his remedy against the corporation in control, and is not first required to settle the legality of a lease, in which he has no interest. Were there any doubt about this construction it must be removed by the provisions of § 37, in which it appears that after notice the "corporation owning, controlling or operating, such railroad," is liable to a forfeiture for neglect to build, or repair;—thus distinctly recognizing the obligation to build or repair the fence as resting upon the corporation controlling or operating;—the notice being necessary to fix the liability for the penalty, and not as a condition precedent to the obligation to repair.

It is conceded that the obligation would have attached, if the lease had been valid. But the defendant assumed it to be valid, acted upon it as such, so far, certainly, as receiving from it all the advantages which a valid lease could give, neither the state nor the lessor interposing any objection or obstruction. It cannot set up the lease for the advantages it brings and repudiate it for the liabilities imposed. This principle was decided in *McCluer* v. *Manchester & Lawrence Railroad*, 13 Gray, 124, 129. True that case was founded upon an alleged breach of a contract. But the defense was the same as in this. In that case, the charge was a violation of an obligation imposed by a contract; in this for the neglect of one imposed by a statute, and the defense must be equally unavailable in each. Hence the exceptions must be overruled.

The case is also presented upon a motion for a new trial upon the ground that the verdict is against the law as well as the evi-

dence.   As to the proper conclusions to be drawn from the evidence we apprehend there can be little if any doubt.

It is contended that as a matter of law, aside from the question raised by the exceptions, this action cannot be maintained, because, if we understand the contention aright, the injury was caused not in consequence of an escape through the fence by the injured colt, but by his coming in contact with it.   If this happened through any viciousness on the part of the colt the ground would seem to be well taken.   But if otherwise, if sustained, it must be upon the ground that when the corporation had built and kept up a legal and sufficient fence to prevent the escape of domestic animals ordinarily peaceful and quiet, its duty was discharged and the animals would be at the risk of the owner.

In this case, as the facts show, the colt did not escape and so far as appears the fence was sufficient to prevent the escape of any animals against which the corporation was bound to fence; and it may be conceded, that the primary and perhaps the only purpose of the statute is to prevent the escape of domestic animals, both for their own protection and that of the public.

It must, perhaps, be further conceded that a fence made of barbed wire "protected by an upper rail or board of wood," may, under the proviso attached to § 1, c. 22, R. S., be deemed a legal and sufficient fence, and when properly built and kept in repair, a full discharge of the obligation resting upon the corporation by virtue of the statute.   But the statute must have a reasonable construction.   It requires certain things to be done for a certain object.   It neither requires nor authorizes anything beyond. The meaning of a fence is something to protect and restrain and not to destroy.   To be legal it must be a compliance with the law, but not necessarily a violation of the fundamental principle that each should use his own and discharge his obligations, with a due regard to the rights of others.   While the statute requires a legal and sufficient fence to be of a certain height, and, to some extent, recognizes certain materials of which it may be built, it does not specifically prescribe how the materials shall be put together.   Hence it is clear that considering the object to be attained and the well established principles of law applicable,

while the fence must be so built and maintained as to be a reasonable restraint against all domestic animals of ordinary docility, it is not to be made unnecessarily dangerous to that class of animals, or permitted to become so by neglect.

That the fence now in question as originally made, was both legal and sufficient, except as to its height, is not denied and its want of the proper height does not seem to have contributed to the accident. There is some apparent conflict of testimony as to its condition, previous to and at the time of the accident, but it is susceptible of explanation consistently with the integrity of all the witnesses. A fair preponderance of the evidence leads to the conclusion that some of the posts had become decayed, by means of which the fence where the injury was done, was sloping away from the pasture; that one or more of the wires had become loosened, whereby the spaces between had become larger than they originally were, and that the colt in protecting himself, from flies or in some manner became entangled in this loose net work of barbed wires and in disengaging himself caused the injury. If the jury were of the opinion from this testimony, as they probably were, that there was undue neglect in permitting the fence to get into the condition it was, and that a man of ordinary care might well have anticipated that with one or more colts in the pasture, just such an accident would have been likely to have happened without imputing misconduct to the colt, we see no reason for disturbing the verdict.

*Exceptions and motion overruled.*

PETERS, C. J., VIRGIN, LIBBEY, EMERY and FOSTER, JJ., concurred.