98   511
101   42

SARAH W. COTTON

*vs.*

WISCASSET, WATERVILLE & FARMINGTON RAILROAD COMPANY.

Kennebec.    Opinion March 25, 1904.

*Fences.    Railroads,*—sufficient fence defined.    *R. S. (1883), c. 22, § 1;
c. 51, §§ 36, 37.*

Revised Statutes (1883), c. 51, §§ 36 and 37, require a railroad company to erect and maintain, along the line of its road, a fence sufficient to restrain and exclude any of the ordinary domestic animals from straying upon that part of its track which passes through or is contiguous to the inclosure where such animals are pastured or kept.

A fence abutting a railroad four feet in height and otherwise complying with the statute and that will restrain horses, cows and oxen but will not restrain sheep, is not a legal and sufficient fence under the railroad statute relating to fences.

Agreed statement.    Judgment for plaintiff.

Action to recover the statute penalty for failing to erect and maintain a sufficient fence.

The case is stated in the opinion.

*F. J. C. Little,* for plaintiff.

*L. R. Folsom,* for defendant.

SITTING:  WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, SPEAR, JJ.

SPEAR, J.  This is an action brought under R. S. (1883), c. 51, §§ 36 and 37, to recover of the Wiscasset, Waterville and Farmington Railroad Company a forfeiture of one hundred dollars for the failure, on the part of said company, after due notice, to repair their fence along the line of said railroad, adjoining the plaintiff's premises. The case comes up on the following agreed statement of facts:  "It is admitted that Sarah W. Cotton was the owner in fee simple of real estate described in the writ, on the sixth day of May, 1902, and for a long time prior thereto, and still is the owner of such real estate," and "that on the sixth day of May, 1902, she gave to said defendant *legal notice* that the line fence between her close and that occupied by the defendant, was defective and in need of repair;" that "said fence although four feet in height, and otherwise complying with the statute, and sufficient to restrain horses, cows and oxen, was not sufficient to *restrain sheep* from passing from her land on to that of said defendant;" "that said defendant did not repair said fence within thirty days after said notice had been given;" and "that if the action can be maintained upon this statement of facts under the declaration in the plaintiff's writ, the defendant is to be defaulted, otherwise the plaintiff is to become non-suit."

The statute under which the plaintiff claims is as follows:  "The owner of any inclosed or improved land or wood-lot belonging to a farm abutting upon any railroad which is finished and in operation, may at any time between the twentieth day of April and the end of October, give written notice to the president, treasurer, or either of the directors of the corporation owning, controlling or operating such railroad, that the line fence against his land has not been built, or if built, that the same is defective and needs repair.  And if said corporation neglects to build or repair such fence, for thirty days after

receiving such notice, it forfeits to such owner one hundred dollars, to be recovered in an action on the case." The defendant contends that, under the agreed statement and this statute, the plaintiff shows no cause of action; that although she alleges that the defendant company has neglected and refused to erect and maintain a sufficient and lawful fence, she at the same time negatives the allegation by the admission that there was a fence erected and maintained which was "four feet in height and otherwise complying with the statute." But the agreed statement goes further and admits that, while the fence may comply with the statute, and will "restrain horses, cows and oxen" it "*will not restrain sheep.*" This qualification that "*it will not restrain sheep*" contains the very essence of the agreed statement. The other qualifications, that the fence otherwise complies with the statute, and will restrain horses, cows and oxen, are simply terms of exclusion, eliminating these questions from consideration, thereby leaving for determination the single question whether a fence that "*will not restrain sheep*" is "legal and sufficient" under the railroad statute relating to fences.

The defendant's objection cannot prevail. The cause of action is properly set out. This brings us directly to the issue in question, does section thirty-six contemplate the erection and maintenance of a fence by the railroad company that will restrain and exclude, not only horses, oxen and cows, but the other smaller domestic animals, such as sheep? We think it does.

Revised Statutes (1883), c. 22, § one, provides: "All fences four feet high and in good repair, consisting of rails, timber, boards, stone walls, iron or wire; and brooks, rivers, ponds, creeks, ditches and hedges, or other things which, in the judgment of the fence viewers having jurisdiction thereof are equivalent thereto, are legal and sufficient fences." This statute is as old as the State. An analysis shows that it is very indefinite in describing what constitutes a "legal and sufficient" fence. First, it must be four feet high. Second, it may be of rails, timber, boards, iron or wire. But how shall it be put together? How many rails, how many timbers, how many wires? Upon these details the statute is silent. It would not be contended that one rail, one timber or one strand of wire,

erected at a height of four feet, would constitute such a fence, nor that twenty of either kind would be required. How many then are required? Where is the mean between these two extremes? The statute does not say and therefore does not fully define what constitutes a "legal and sufficient" fence. In the very nature of the case it could not, for what might be "legal and sufficient" for one purpose might not be for another. A fence that would be sufficient against oxen might not be effective against sheep, but it might be unreasonable to require a fence against oxen to be sheep tight. All these matters were, therefore, wisely left to the discretion of the fence viewers so that the sufficiency of each particular line of fence could be determined with reference to the purpose which it was intended to serve. If the parties disagree as to whether a piece of fence is "legal and sufficient" to effect the result expected of it, then the fence viewers are the tribunal designated to settle that question. They can undoubtedly determine whether the material prescribed by statute as suitable, is so put together as to constitute, in the particular case upon which they are called to pass, a "legal and sufficient" fence. That is, the legality and sufficiency of a fence is determined, not upon the number of rails or wires it contains, but with reference to the particular office it is intended to serve.

The court will take judicial notice of the historical fact that when this statute was enacted, sheep were among the most indispensable domestic animals kept upon the farm, and, as late as 1842 when the railroad statutes were enacted, the raising of sheep was a most important feature of nearly every farming industry. Even at this latter date the spinning wheel and the loom had by no means been laid aside, and the homespun was worn by many a country lad. These flocks, then as now, grazed from the earliest spring to the latest fall, upon the pastures of the farm, and had to be fenced against as much and even more than horses and oxen. In view, then, of the purpose which the division fence, for all these years, has been required to serve, it cannot be doubted that the legislature intended that it should be sufficient, when properly built and kept in repair, to restrain and exclude sheep as well as the larger domestic animals.

Revised Statutes (1883), c. 51, § 36, specifying the kind of fence required along the line of a railroad, is as follows: "Where a railroad passes through inclosed or improved land, or wood-lots belonging to a farm, *legal* and *sufficient* fences shall be made on each side of the land taken therefor, before the construction of the road is commenced, and such fences shall be maintained and kept in good repair by the corporation." It will be readily observed that this section specifies and requires fences that shall have exactly the same characteristics as those defined in section one, c. 22, namely, that they shall be "legal and sufficient;" therefore we think it should be construed with reference to section one, c. 22, in pari materia, to which it is proper to refer to ascertain what kind of a fence under section 36, is "legal and sufficient." The phrase in each statute is the same and has the same meaning. The interpretation given to section 36 by the court in *Gould* v. *Bangor & Piscataquis R. R.*, 82 Maine, 126, sustains this view. The court, in construing the phrase "legal and sufficient" in section 36, alluded to c. 22 as follows: "It must, perhaps, be further conceded that a fence made of barbed wire "protected by an upper rail or board of wood," may, under the proviso attached to § one, c. 22, R. S., be deemed a "legal and sufficient" fence, and when properly built and kept in repair, a full discharge of the obligation resting upon the corporation by virtue of the statute." It finds that the phrase "legal and sufficient" has the same meaning in section 36 that it has in c. 22. But we have above held that a "legal and sufficient" fence under c. 22, when properly built and kept in repair, should restrain and exclude sheep; it therefore follows that a "legal and sufficient" fence under c. 36, should accomplish the same result. There is no reason why it should not. Our court have held that it should. In the last cited case pages 126-127 they say: "Hence it is clear that considering the object to be attained and the well established principles of law applicable, while the fence must be so built and maintained as to be a reasonable restraint against all domestic animals of ordinary docility, it is not to be made unnecessarily dangerous to that class of animals, or permitted to become so by neglect." While the question in the case at bar was not directly in issue in the case quoted, yet the point is there squarely

decided, that the railroad corporation must fence against "all domestic animals of ordinary docility." Sheep are most certainly domestic animals of ordinary docility and must necessarily come within the above classification.

It therefore seems clear to us that, with reference to the object it was intended to accomplish, the statute requires a railroad company to erect and maintain, along the line of its road, a fence sufficient to restrain and exclude any of the domestic farm animals of ordinary docility from straying upon that part of its track which passes through or is contiguous to the inclosure where such animals are pastured or kept. If it passes the inclosure of horses and oxen, it must fence against horses and oxen; if it passes the pasture of sheep, it must fence against sheep; that is, it must build a fence against each man's farm or inclosure that will accomplish the particular purpose for which the fence is required. The corporation is not obliged, in order to comply with the statute, to build a sheep tight fence along its whole line, whether it passes the inclosure of sheep or not, but only along so much of its line as passes a sheep inclosure.

In accordance with the stipulation in the agreed statement, the entry must be,

*Defendant defaulted for one hundred dollars.*