ALBION EARLE MORTON, PETR.
for Writ of Habeas Corpus
*vs.*
PERRY D. HAYDEN, SUPT.
REFORMATORY FOR MEN

Cumberland.   Opinion, May 6, 1958.

*Walter G. Casey,* for plaintiff.

*Roger Putnam,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, JJ. BELIVEAU, J., sat at argument but retired before the opinion was adopted. WEBBER, J., concurs specially. DUBORD, J., dissents.

SULLIVAN, J. The petitioner applied for a writ of habeas corpus and it was issued. Following the return by the respondent the parties elected to report the case to this Court upon an agreed statement of facts and the certificate of the Justice. R. S., 1954, Chap. 103, Sec. 15.

The petitioner was born on December 17, A. D. 1940. On August 26, A. D. 1957 he was arraigned in the juvenile court for having feloniously uttered and published as true, a false, forged and counterfeit instrument on August 19, A. D. 1957. He was tried, found guilty of juvenile delinquency and committed to the reformatory for men. He charges that he is unlawfully deprived of his liberty.

The issue is whether a youth more than 16 years of age but less than 17 may be legally sentenced and committed, to the reformatory for men by a judge of a juvenile court for juvenile delinquency.

> *R. S. 1954 c. 27, § 66,* as amended by *P. L. 1955, c. 318, § 1,* is, in pertinent part, as follows:

> "The state shall maintain a reformatory in which all *males over the age of 16 years,* except as pro-

vided in section 80, and under the age of 36 years *who have been convicted of or have pleaded guilty to crime* in the courts of this state or of the United States, and who have been duly sentenced and removed thereto, shall be imprisoned and detained in accordance with the sentences or orders of said courts and the rules and regulations of said reformatory. The provisions for the safekeeping or employment of such inmates shall be made for the purpose of teaching such inmates a useful trade or profession, and improving their mental and moral condition.- - - -" (italics supplied)

Save for the addition of the clauses, "and under the age of thirty-six years" and "except as provided in section 80," the statute quoted has existed quite as it was enacted in 1919. P. L. 1919, c. 182, § 1.

On August 26, A. D. 1957 this petitioner could not have been convicted of crime nor could he have pleaded guilty to crime. His youth precluded both possibilities in as much as the charge against him was not a crime the punishment for which may be imprisonment for life or for any term of years. R. S. 1954, c. 146, § 2, c. 133, § 1, P. L. 1955, c. 29; *Wade* v. *Warden,* 145 Me. 120.

R. S. 1954, c. 27, § 66, the statute authorizing the reformatory for men, as amended, taken from its context of statutes and read literally would appear to eliminate the possibility of legal commitment to, or confinement of the petitioner in, the reformatory. To ascertain the effects of the act, however, it is necessary to consider it with other existing and kindred laws. Of the latter there are several.

In 1919 the legislature placed boys between the ages of 8 and 16 years under a disability or incompetency to commit crime save for the gravest types.

"Act of Juvenile Delinquency.

When a boy *between the ages of eight and sixteen years* is convicted before any court or trial justice

having jurisdiction of the offense, of an offense punishable by imprisonment in the state prison, not for life, or in the county jail, or in the house of correction, such court or justice may order his commitment to the state school for boys or sentence him to the punishment provided by law for the same offense - - - *The record in the event of conviction in all cases shall be that the accused was convicted of juvenile delinquency,* and the court shall have the power at the hearing of any such case to exclude the general public other than persons having a direct interest in the case. The records of any such case by order of the court may be withheld from indiscriminate public inspection, but such records shall be open to inspection by the parent or parents of such child or lawful guardian or attorney of the child involved." (italics supplied) P. L. 1919, c. 58.

The maximum age of the boy was advanced from 16 to 17 in 1921 (P. L. 1921, c. 129) and has remained at 17 to the present time. (P. L. 1955, c. 211, § 1) By this law a boy under 17 has been incapable of committing all crimes save murder or treason since 1921, and from 1935 to August 28, A. D. 1957 all crimes save murder, treason and kidnapping. Juvenile delinquency is not crime and a delinquent child is not a criminal. *Wade* v. *Warden,* 145 Me. 120, 125, 128.

In 1919 the same legislature which passed the "Act of Juvenile Delinquency" (P. L. 1919, c. 58) enacted the following law:

"When a male *over the age of sixteen years is* convicted before any court or trial justice having jurisdiction of the offense, of an offense punishable by imprisonment in the state prison, or in any county jail, or in any house of correction, such court or trial justice *may order his commitment to the reformatory for men,* or sentence him to the punishment provided by law. - - -" (italics supplied) P. L. 1919, c. 182, § 7.

In 1923 an age limit of 36 years was imposed by amendment. (P. L. 1923, c. 58, § 2). Otherwise, for the purposes of our present analysis, the act (P. L. 1919, c. 182, § 7) has remained as it is presently. (R. S. 1954, c. 27, § 67, P. L. 1955, c. 318, § 2) And again we comment that from 1921 to 1935 (P. L. 1921, c. 129) a boy under 17 was incapable of committing any crime except murder or treason and from 1935 to August 28, A. D. 1957 any crime except murder, treason and kidnapping. The act just quoted above (P. L. 1919, c. 182, § 7) has never been altered to advance the minimum age to 17. Since 1921 there has been an overlapping of ages, between 16 and 17, in the juvenile delinquency age range and the minimum age in this reformatory sentence act. The above act speaks of "a conviction - - - of an offense" but includes offenses punishable by jail and house of correction confinement. In 1923 the legislature passed the following act:

> "If, in the opinion of the trustees of juvenile institutions, any boy, under the guardianship of the state school for boys or who may hereafter be committed thereto, *who has attained the age of sixteen years,* is incorrigible, they may certify the same on the original mittimus - - - *whereupon said boy shall be transferred from said state school for boys to the reformatory for men - - - It shall be the duty of the officers of the reformatory for men to receive any boy so transferred and the remainder of the original commitment shall be executed at the reformatory for men - - -"* (italics supplied) P. L. 1923, c. 28.

This statute without consequential change has continued as law and is now R. S. 1954, c. 27, § 87. It provides for the commitment of incorrigible 16 year old boys to the reformatory.

In the Revised Statutes of 1930 are two more acts treating of incorrigibles at the State School for Boys, R. S. 1930, c. 154, §§ 5 and 6.

"Every boy committed to said school shall be there kept, disciplined, instructed, employed and governed, under the direction of the board of trustees, until the term of his commitment expires, or he is discharged as reformed, bound out by said trustees according to their by-laws, or remanded to some penal institution under the sentence of the court *or transferred to the reformatory for men as incorrigible,* upon the information - - -" (italics supplied) R. S. 1930, c. 154, § 5.

This act has remained in being except for amendments not affecting our present consideration. See R. S. 1954, c. 27, § 79, P. L. 1957, c. 387, § 15.

"When a boy is ordered to be committed to said school and the trustees deem it inexpedient to receive him, or his continuance in the school is deemed injurious to its management and discipline, they shall certify the same upon the mittimus by which he is held, and the mittimus and boy shall be delivered to any proper officer who shall forthwith commit said boy to the jail, house of correction, or state prison, *or if he has attained the age of sixteen years, to the state reformatory for men according to his sentence* - - -" (italics supplied) R. S. 1930, c. 154, § 6.

This law, with amendments of no moment to our current study, has persisted until at present it reads:

"- - - *or if he has attained the age of ~~16~~ 15 years, to the State Reformatory for Men according to his sentence.*" (italics supplied) R. S. 1954, c. 27, § 80, P. L. 1955, c. 318, § 3.

Thus we have a provision for committing 15 year old boys to the reformatory.

In 1931 the legislature by act conferred upon judges of municipal courts exclusive, original jurisdiction over all offenses committed *by children under the age of 15 years* with the following qualification:

12

> *"Unless the offense is aggravated or the child is of a vicious or unruly disposition* no court shall sentence or commit a child to jail, *reformatory,* or prison, or hold such child for the grand jury." (italics supplied) P. L. 1931, c. 241, § 4.

In 1933 the legislature, by amendment, raised the age of children subject to such exclusive, original jurisdiction to 17 years generally but at the same session it amended the sentence quoted immediately above to read thus:

> *"Unless the offense is aggravated or the child is of a vicious or unruly disposition* no court shall sentence or commit *a child under the age of 15 years* to jail, *reformatory,* or prison, or hold such child for the grand jury." (italics supplied) P. L. 1933, c. 18; c. 118, § 5.

In 1937 this same sentence was once more amended:

> *"Unless the offense is aggravated or the child is of a vicious or unruly disposition* no court shall sentence or commit a child under the age of ~~15~~ *17* years to jail, *reformatory,* or prison or hold such child for the grand jury." (italics supplied) P. L. 1937, c. 197.

In 1943 the legislature amended the law excepting capital or otherwise infamous crimes, providing for the holding of children for the grand jury, abolishing the sentence set out above as to vicious, unruly children and adopting these words:

> "- - - and no municipal court shall sentence a child under the age of *17* years to jail, *reformatory* or prison." (italics supplied) P. L. 1943, c. 322.

In 1947 there followed an amendment changing crimes excepted: "except for a crime the punishment for which may be imprisonment for life or for any term of years." P. L. 1947, c. 334, § 1.

In 1951 we have this change:

> "- - - and no municipal court shall sentence a child under the age of 17 years to jail, ~~reformatory~~ or prison; - - -" P. L. 1951, c. 84, § 4.

The law which was P. L. 1931, c. 241, with the amendments reviewed above and others not now memorable here, is R. S. 1954, c. 146, §§ 2 and 6. It will be discerned from this 1931 enactment as extended that from 1919 when juvenile delinquency was recognized until 1937 boys over 16 years of age could have been committed to the reformatory. From 1937 to 1943 vicious and unruly boys over the age of 16 years could have been so committed. From 1951 to the present such a commitment for all boys under 17 years down the range of the juvenile scale has been permissible, due to the above amendment of 1951.

Prior to that 1951 amendment to what is now R. S. (1954) c. 146, § 6, as amended, the statute (then R. S. (1944) c. 133, § 6; P. L. 1947, c. 334) read as follows:

> "A municipal court may - - - make such other disposition as may seem best for the interests of the child and for the protection of the community - - - and no municipal court shall sentence a child under the age of 17 years to jail, *reformatory* or prison; - - -" (emphasis supplied)

It is manifest that the power of the municipal court, above, was stated as quite plenary and then was restricted by prohibiting any sentence "to jail, reformatory or prison." When, therefore, the legislature by the amendment of 1951 (P. L. c. 84, § 4) struck out the word, "~~reformatory~~" the legislature intended to remove one prohibition then existing, to the foregoing and quite plenary power of the court and at least by plain implication made sentences to the reformatory permissive. It is further very pertinent to our inquiry to find that the legislature adopted the above amendment of 1951 (P. L. c. 84, § 4) as section 4 of an act entitled: "An Act to Clarify Certain Provisions of the Institutional Service Law" in which section 2 contained an amendment to what is now R. S. (1954) c. 27, § 67, as amended, the reformatory commitment statute. See P. L. 1951, c. 84. The Legislature by such 1951 amendments discovered it-

self as allocating and mindfully treating juvenile sentencing and reformatory commitment as kindred matters in one reform chapter or measure. Very arguably may it be urged that the act of 1951 (P. L. 1951, c. 84) by clear implication also amended the reformatory creation statute which is now being construed, R. S. (1954) c. 27, § 66, as amended.

This synopsis of statutes exposes shortcomings in the correlation of the acts. But such a defect is only of form. The legislature in 1919 established the reformatory for men seemingly for criminals if the creative act were to be read and considered literally and exclusively. The enactment does not state that the reformatory shall be maintained only for criminals but it must be conceded that a meticulous interpretation of it apart from laws in pari materia might fortify such an inference. However, in the prolongation of the law through a span of 38 years the legislature by various statutes hereinbefore reviewed and adopted during the same period of time has affirmatively provided for the commitment of juvenile delinquents, over 16 years and under 17 years, to the reformatory for men. Indeed, one act authorizes such commitments for 15 year old delinquents. There can be no doubt that the legislature acted in each instance with a full comprehension of its doings and it is the prerogative of the legislature alone to enact our laws.

Our court has on many occasions set forth the canons of sound statutory interpretation wisely decisive of any scruples one might be disposed to entertain here. We quote from 2 well known authorities:

> *State v. Koliche*, 143 Me. 281
>
> @ 283. "The fundamental rule in the construction of a statute is legislative intent. Craughwell V. Mousam River Trust Co., 113 Me. 531; 95 A. 221. It is also a recognized rule of construction that a penal statute is to be interpreted strictly in favor of the respondent. State V. Wallace, 102 Me. 229; 66 A. 476. Although 'Penal laws are to be

strictly construed, they are not to be construed so strictly as to defeat the obvious intent of the Legislature.' State V. Cavalluzzi, 113 Me. 41; 92 A. 937, 938; State V. Bass Co., 104 Me. 288, 71 A. 894; 20 L. R. A., N. S. 495. To arrive at legislative intent the statute must be construed as a whole, and different sections of the same statute may be read together to ascertain legislative purpose and intent. Rackliff V. Greenbush, 93 Me. 99; 44 A. 374; State V. Frederickson, 101 Me. 37; 63 A. 535; 6 L. R. A., N. S. 186; 115 Am. St. Rep. 295; 8 Am. Cas. 48."

*State* v. *Frederickson,* 101 Me. 37

@ 41. "But under the established rules of construction the two sections of the statutes should be construed together. Both sections are part of the same body of revised laws. We see no good reason why chapters of the same statute should not be construed with reference to each other as well as sections of the same chapter. Chief Justice Shaw in Com. V. Goding, 3 Met. 103, says: 'In construing the Revised Statutes, we are to bear in mind that the whole were enacted at one and the same time, and constitute one act; and then the rule applies, that in construing one part of a statute, we are to resort to every other part to ascertain the true meaning of the legislature in each particular provision. This rule is peculiarly applicable to the Revised Statutes in which, for the convenience of analysis, and classification of subjects, provisions are sometimes widely separated from each other in the code, which have so immediate a connection with each other, that it is quite necessary to consider the one, in order to arrive at the true exposition of the other.'

"The suggestion in the above quotation that 'the whole were passed at one and the same time' was not intended we apprehend to in any degree limit the rule of comparing statutes, whenever enacted, in pari materia, a principle well established by our own as well as other courts. Gould V. B. & P. R. R.,

82 Maine, 126; Cotton V. W. W. & F. R. R. Co., 98 Maine, 511; Com. V. Sylvester, 13 Allen, 247.

"Black on Interpretation of Laws, page 6, in discussing this principle says: 'The phrase 'statute in pari materia' is applicable to private statutes or general laws made at different times, and in reference to the same subjects.' . . . . ."

Since 1919 two of the noteworthy reforms adopted and developed by our lawmakers have been the moral and social regeneration of criminal malefactors, both adolescent and adult. The young are preserved from the disgrace of criminal record and devoted efforts are made to right their lives. *Wade* v. *Warden,* 145 Me. 120. The mature are rehabilitated, rather than punished, where there is deemed to be some hopeful promise and considerations of public weal at all permit. *Gosselin, Petitioner,* 141 Me. 412. For males in this noble uplift are two major public institutions, the state school for boys and the reformatory for men. It is a truism that the contemporary youth in this country generally is more sophisticated than were his forebears, due in large measure to the greater dissemination of information and goods, condensation of population and increase in travel. The line of demarcation between childhood and adulthood has receded. No two males are completely identical. The legislators and those who staff our institutions well know that some older "teenagers" feel undignified and are not so disposed to be receptive to reform when grouped with younger children. Older boys may be restive to be accepted as young men. Some are quite sociopathic and are subjects for resocialization in the more virile climate of the men's reformatory where, particularly, there is greater security provided. The intention of the legislature to bridge a transition between the school for boys phase of enlightenment, suasion and discipline and that of the senior reformatory for men is unmistakable and intelligible. The reformatory act and the juvenile delinquency statute under which the

petitioner was sentenced and committed are not repugnant but actually complementary.

The petitioner is not unlawfully deprived of his liberty. The mandate must be:

> *Petition for habeas corpus,*
> *dismissed, writ discharged.*

WEBBER, J. (Concurring)

I fully concur with the opinion of the Court and the result reached therein. All agree that the statutory law relating to juvenile delinquency has developed by a process of fragmentary amendment which has produced an end product urgently requiring revision and correlation. Bewildering as this legislative morass may appear, I am satisfied that it is by no means impossible to discover underlying legislative intent. Reduced to simplest terms, a municipal court could, at the time this petitioner was before it, "make such other disposition as may seem best for the interests of the child and for the protection of the community," subject to the limitation that the juvenile delinquent under the age of 17 years could not be sent "to jail or prison." R. S. 1954, Chap. 146, Sec. 6. Here was a broad and inclusive power of disposition subject to a specific limitation. Prior to 1951 the limitation was broader and forbade also the sending of the juvenile delinquent to a "reformatory." When by P. L. 1951, Chap. 84, Sec. 4, the Legislature deleted the word "reformatory," it had a purpose in mind and did not intend a meaningless act. The only purpose it could possibly have had was to permit the disposition previously forbidden. I am satisfied that the effect of this amendment was also to amend by implication the statute which prescribes who may be received at the reformatory for men and which requires that they shall have been "convicted of or have pleaded

guilty to crime." R. S. 1954, Chap. 27, Sec. 66. The necessary implication would require the addition of the words "or juvenile delinquency" after the word "crime." This is an essential corollary if meaning and purpose are to be given to the act of the Legislature in deleting the word "reformatory."

In my view the Legislature did no more than recognize that times have changed. When the juvenile delinquency law was first conceived in this state, the term "juvenile delinquent" brought to the average mind a mental picture of a child playing truant, breaking windows, or stealing apples. Today we must reckon with the reality, so painfully apparent in large metropolitan areas, of adolescent hoodlums, organized in gangs, armed with dangerous weapons and bent on crimes of force and violence. Such a youthful offender, truculent and brazen, could easily undermine and destroy the efforts at reform in a state school which is primarily designed to meet the needs of more pliant and less sophisticated children. I am convinced that the Legislature fully intended by its amendments, express and implied, to enlarge the possibilities of disposition available to Municipal Courts in dealing with juvenile delinquents.

DUBORD, J. (Dissenting opinion.)

I am unable to agree with my associates. My opinion is that the petitioner was illegally sentenced and is entitled to be enlarged from his confinement in the reformatory for men.

The petitioner was between the ages of 16 and 17 years when he was arraigned in the municipal court, sitting as a juvenile court, upon the charge of having feloniously uttered and published as true a false, forged and counterfeit instrument. Upon trial, he was found guilty of juvenile

delinquency and committed to the reformatory for men. He filed a petition for a writ of habeas corpus alleging that he is unlawfully deprived of his liberty. The matter was referred to this Court upon an agreed statement of facts.

The issue is whether the petitioner, who is more than 16 years of age, but less than 17 years of age, may be legally sentenced and committed to the reformatory for men by a judge of a municipal court, for juvenile delinquency.

The pertinent parts of the statutes with which we are concerned are as follows:

Section 2, Chapter 146, R. S. 1954.

"Judges of municipal courts within their respective jurisdictions shall have exclusive original jurisdiction over all offenses, except for a crime, the punishment for which may be imprisonment for life or for any term of years, committed by children under the age of 17 years, and when so exercising said jurisdiction shall be known as juvenile courts. *Any adjudication or judgment under the provisions of sections 4 to 7, inclusive, shall be that the child was guilty of juvenile delinquency, and no such adjudication or judgment shall be deemed to constitute a conviction for crime.*" (Emphasis supplied.)

Section 6, Chapter 146, R. S. 1954, as amended by Section 2, Chapter 211, P. L. 1955.

"A municipal court may place children under the age of 17 years under the supervision, care and control of a probation officer or an agent of the department of health and welfare or may order the child to be placed in a suitable family home subject to the supervision of a probation officer or the department of health and welfare or may commit such child to the department of health and welfare or make such other disposition as may seem best for the interests of the child and for the protection of the community including holding such child for

the grand jury or commitment of such child to the Pownal State School upon certification of 2 physicians who are graduates of some legally organized medical college and have practiced 3 years in this state, that such child is mentally defective and that his or her mental age is not greater than $3/4$ of subject's life age nor under 3 years, or to the state school for boys or state school for girls; but no boy shall be committed to the state school for boys who is under the age of 11 years and no girl shall be committed to the state school for girls who is under the age of 9 years and no municipal court shall sentence a child under the age of 17 years to jail or prison; any child or his next friend or guardian may appeal to the superior court in the same county in the same manner as in criminal appeals, and the court may accept the personal recognizance of such child, next friend or guardian, and said superior court may either affirm such sentence or order of commitment or make such other disposition of the case as may be for the best interests of such child and for the peace and welfare of the community."

The 1955 amendment increased the minimum age for commitment to the state school for boys from nine to eleven years.

Section 66, Chapter 27, R. S. 1954, as amended by Section 1, Chapter 318, P. L. 1955.

"The state shall maintain a reformatory in which all males over the age of 16 years, except as provided in section 80, and under the age of 36 years *who have been convicted of or have pleaded guilty to crime in the courts of this state or of the United States,* and who have been duly sentenced and removed thereto, shall be imprisoned and detained in accordance with the sentences or orders of said courts and the rules and regulations of said reformatory." (Emphasis supplied.)

The 1955 amendment inserted the words "except as provided in section 80" in the first sentence.

Section 67, Chapter 27, R. S. 1954, as amended by Section 2, Chapter 318, P. L. 1955.

"When a male over the age of 16 years, except as provided in section 80, and under the age of 36 years is convicted by any court or trial justice having jurisdiction of the offense, of an offense punishable by imprisonment in the state prison, or in any county jail or in any house of correction, such court or trial justice may order his commitment to the reformatory for men, or sentence him to any other punishment provided by law for the same offense; - - -. When a male is ordered committed to the reformatory for men, the court or trial justice ordering the commitment shall not prescribe the limit thereof, but no male committed to the reformatory as aforesaid shall be held for more than 3 years."

The 1955 amendment inserted the words "except as provided in section 80" near the beginning of the first sentence.

Section 77, Chapter 27, R. S. 1954, as amended by Section 1, Chapter 211, P. L. 1955. Section 77 was formerly Chapter 58, P. L. 1919.

"When a boy between the ages of 9 and 17 years is convicted before any court having jurisdiction of an offense punishable by imprisonment in the state prison, not for life, or in the county jail or in the house of correction, such court may order his commitment to the state school for boys or sentence him to the punishment provided by law for the same offense. If to such school, the commitment shall be conditioned that if such boy is not received or kept there for the full term of his minority, unless sooner discharged by the department as provided in section 80, or released on probation as provided in section 82, he shall then suffer the punishment provided by law, as aforesaid, as ordered by the court; - - -. The record in the event of conviction in all such cases shall be that the accused was convicted of juvenile delinquency, - - -."

Section 80, Chapter 27, R. S. 1954, as amended by Section 3, Chapter 318, P. L. 1955.

"When a boy is ordered to be committed to said school and the department deems it inexpedient to receive him, or his continuance in the school is deemed injurious to its management and discipline, it shall certify the same upon the mittimus by which he is held, and the mittimus and boy shall be delivered to any proper officer, who shall forthwith commit said boy to the jail, house of correction or state prison, or if he has attained the age of 15 years, to the state reformatory for men according to his sentence. The department may discharge any boy as reformed; and may authorize the superintendent, under such rules as it prescribes, to refuse to receive boys ordered to be committed to said school, and his certificate thereof shall be as effectual as its own."

Section 87, Chapter 27, R. S. 1954.

"If, in the opinion of the department, any boy, under the guardianship of the state school for boys or who may hereafter be committed thereto, who has attained the age of 16 years, is incorrigible, the superintendent may certify the same on the original mittimus and have it signed by the commissioner or some official duly authorized by him; whereupon said boy shall be transferred from said state school for boys to the reformatory for men, together with the original mittimus and certificate thereon. It shall be the duty of the officers of the reformatory for men to receive any boy so transferred and the remainder of the original commitment shall be executed at the reformatory for men."

In my opinion all of the powers vested in the municipal court, sitting as a juvenile court, are to be found in Section 6, Chapter 146, R. S. 1954, as amended by Section 2, Chapter 211, P. L. 1955.

Now let us analyze what these powers are.

If a child under the age of 17 years appears before a municipal court and is found guilty of juvenile delinquency, what may a judge of the municipal court do? Section 6, gives him the following powers:

(1) He may place children under the age of 17 years under the supervision, care and control of a probation officer;

(2) He may place such child under the supervision, care and control of an agent of the department of health and welfare;

(3) He may order the child to be placed in a suitable family home, subject to the supervision of the probation officer, or the department of health and welfare;

(4) He may commit such child to the department of health and welfare.

Then follow additional powers set forth after the statement, "or make such other disposition as may seem best for the interests of the child and for the protection of the community including,"

(1) Holding such child for the grand jury, or

(2) Committing such child to Pownal State School (under certain requirements) or

(3) Committing such child to the state school for boys or state school for girls.

In the foregoing outline lie all of the powers reposed in the municipal court. The first four provisions, of course, are in the nature of probation and do not contemplate confinement in any institution. Assuming that the judge of the municipal court, upon trial of a juvenile, decides that these first four provisions should not be used, then he is given power to do certain things, listed in the statute, if he con-

cludes that the interests of the child and the protection of the community require some other procedure. Nowhere is there given power to commit to the reformatory for men.

I propose now to discuss the development of the laws relating to juveniles, but before doing so, I call particular attention to the provisions of Section 66, Chapter 27, R. S. 1954, to the effect that there can be imprisoned and detained in the reformatory for men only males over the age of 16 years and under the age of 36 years *who have been convicted of or pleaded guilty to crime.*

Section 2, Chapter 146, specifically provides that no adjudication that a child is guilty of juvenile delinquency shall be deemed to constitute a conviction for crime.

Consequently, it is my position that with the exception of a transfer of incorrigibles under the provisions of Section 87, Chapter 27, R. S. 1954, and possible confinement under the provisions of Section 80, Chapter 27, R. S. 1954, a person who has not been convicted of crime cannot be detained as a prisoner in the reformatory for men.

At this point it may be well to mention the fact that Section 87, Chapter 27, specifically provides that it shall be the duty of the officers of the reformatory for men to receive any child so transferred, as an incorrigible, the remainder of the original commitment to be executed at the reformatory for men. Moreover, Section 66, Chapter 27, R. S. 1954, was amended, as previously pointed out, in 1955, to provide for Section 80, Chapter 27, R. S. 1954. If it had been the intention of the legislature to authorize a commitment to the reformatory for men by a municipal court judge, under the provisions of Section 6, Chapter 146, it would have been easy for the legislature to say so, as it did in the matter of Section 80.

The majority opinion recognizes that Section 66, Chapter 27, on its face, prohibits the commitment of a juvenile found

guilty of juvenile delinquency to the reformatory for men, because such a juvenile has not been convicted of crime. Here is what the majority opinion says:

"R. S. 1954, c. 27, § 66, the statute authorizing the reformatory for men, as amended, taken from its context of statutes and read literally would appear to eliminate the possibility of legal commitment to, or confinement of the petitioner in, the reformatory."

If I understand the majority opinion correctly, it is to the effect that when Section 6, Chapter 146, was amended in 1951, by striking out the word "reformatory" Section 66, Chapter 27, was amended by implication to provide for the detention of juveniles between the ages of 16 years and 17 years. Quoting from the majority opinion:

"Very arguably may it be urged that the act of 1951 (P. L. 1951, c. 84) by clear implication also amended the reformatory creation statute which is now being construed."

In my opinion this is going far afield in the interpretation of a statute. This Court can interpret laws, but has no power to enact them. *Farris, Attorney General* v. *Goss,* 143 Me. 227, 230. More about this later.

A study of the history of our juvenile laws shows that they have grown in a confused sort of way. While Chapter 58, P. L. 1919 is entitled "Act of Juvenile Delinquency" and might give the impression that this was the first act having something to do with juveniles, the fact of the matter is that this section merely amended a prior statute which was Section 3, Chapter 144, R. S. 1916. Chapter 58, P. L. 1919 amended Section 3, Chapter 144, R. S. 1916, by adding a clause authorizing the exclusion of the general public from hearings and for the first time appears a clause providing that:

"The record in the event of conviction in all such cases shall be that the accused was convicted of juvenile delinquency."

This provision to the effect that an adjudication or judgment in the juvenile court shall not be deemed to constitute a conviction for crime is found in § 2, Chapter 146, R. S. 1954.

The pertinent part of Chapter 58, P. L. 1919 insofar as any power to sentence is concerned, reads as follows:

"When a boy between the ages of eight and sixteen years is convicted before any court or trial justice having jurisdiction of the offense, of an offense punishable by imprisonment in the state prison, not for life, or in the county jail, or in the house of correction, such court or justice may order his commitment to the state school for boys *or sentence him to the punishment provided by law for the same offense.*" (Emphasis supplied.)

The foregoing Chapter is the forerunner of Section 77, Chapter 27, R. S. 1954.

It appears that the first act giving municipal courts exclusive original jurisdiction of offenses committed by juveniles was enacted in 1931, and is Chapter 241, P. L. 1931. The pertinent section is Section 1, Chapter 241, P. L. 1931, now Section 2, Chapter 146, R. S. 1954, as amended.

In this Chapter 241, P. L. 1931, (forerunner of Section 6, Chapter 146) we find the powers of the municipal courts defined as follows:

"Sec. 4. Powers of the court. The court may place children under the supervision, care and control of a probation officer or an agent of the state board of children's guardians or may order the child to be placed in a suitable family home subject to the supervisions of a probation officer or the state board of children's guardians or may commit such child to the state board of children's guard-

ians or make such other disposition as may seem best for the interests of the child and for the protection of the community including commitment of such child to the state school for boys or state school for girls.

"Unless the offense is aggravated or the child is of a vicious or unruly disposition no court shall sentence or commit a child to jail, reformatory, or prison, or hold such child for the grand jury."

This is the first time we find the paragraph:

"Unless the offense is aggravated or the child is of a vicious or unruly disposition no court shall sentence or commit a child to jail, reformatory, or prison, or hold such child for the grand jury."

It is of importance to note that this is the first section in which some power is given after the expression:

"Or make such other disposition as may seem best for the interests of the child and for the protection of the community."

The fact that there is a paragraph providing for commitment to jail, reformatory or prison, when the offense is aggravated or the child is of a vicious or unruly disposition would seem to indicate that the clause, "as may seem best for the interests of the child and the protection of the community" does not relate in any manner to the power to sentence a child to jail, reformatory or prison.

Apparently the foregoing section remained in force until changed by § 5b, Chapter 118, P. L. of 1933, which read as follows:

"A municipal court may place children under the age of 15 years under the supervision, care and control of a probation officer or an agent of the department of health and welfare, or may order the child to be placed in a suitable family home, subject to the supervisions of the probation officer or the department of health and welfare, or may

commit such child to the department of health and welfare, or make such other disposition as may seem best for the interests of the child and for the protection of the community, including commitment of such child to the state school for boys or state school for girls."

Then follows the next sentence:

"Unless the offense is aggravated or the child is of a vicious or unruly disposition, no court shall sentence or commit a child under the age of 15 years to jail, reformatory, or prison, or hold such child for the grand jury."

That portion of the act giving exclusive jurisdiction to municipal courts was amended by Chapter 18, P. L. 1933, increasing the age to 17 years, but no change was made in § 5b, giving apparent power to sentence a child under the age of 15 years, when the offense was aggravated or the child was of a vicious or unruly disposition.

By Chapter 197, P. L. 1937, § 5b, was amended by increasing the age to 17 years both in relation to the general power of municipal courts and also in relation to the age cited in the last paragraph pertaining to aggravated offenses.

Again in this section we find the sentence permitting the sentencing of a child when he is vicious or unruly or when the offense is aggravated, as the last sentence in the section, and in no way related to the clause "make such other disposition as may seem best, etc."

This section remained in force until the amendment of 1941 which is § 2, Chapter 245, P. L. of 1941.

In this amendment the paragraph about power to sentence when the offense is aggravated and the child is of a vicious or unruly disposition remains, but after the clause "or make such other disposition as may seem best for the

interests of the child and for the protection of the community" are added the powers to commit to Pownal State School, and the power to commit to the state school for boys or state school for girls remains.

In 1943 by § 2, Chapter 322, P. L. 1943, the section was amended by striking out the paragraph relating to the power to sentence for aggravated offenses and when the child is vicious or unruly, and there was also added to the powers after the clause "or make such other disposition, etc." the power to hold for the grand jury. And for the first time we find the clause "no municipal court shall sentence a child under the age of 17 years to jail, reformatory, or prison."

It seems clear that from here on there is no power to commit to jail, reformatory, or prison and it is my opinion that this clause was put in merely to emphasize that juveniles should be dealt with other than sending them to jail, reformatory or prison. By this amendment of 1943 all power to sentence to any institutions except Pownal, or state school for boys or girls was eliminated entirely.

The next amendment was in 1945, Chapter 63, P. L. 1945, and is of no great importance.

In 1947 by § 6, Chapter 334, an amendment was added providing power to appeal.

In 1951, § 4, Chapter 84, the section was further amended by striking out the word "reformatory."

While it is now argued that the striking of this word gave implied power to sentence to the reformatory, my opinion is that all power was taken away by the 1943 amendment and never given back.

In 1955, § 66, Chapter 27, R. S. 1954, was amended by inserting the words "except as provided in § 80."

Section 80 is the one which purports to provide for the commitment of boys, who have attained the age of 15 years, to the reformatory for men, when it is considered inexpedient to receive such boys in the state school.

Section 80 contemplates a sentence in the alternative, apparently based on Section 77. I have cited these two sections viz., § 77 and § 80, not because they have any particular bearing on the issue before us, but to stress the fact that the legislature saw fit to amend § 67 by specific reference to § 80, and could have taken similar action, if it had been the legislative intent to provide for detention of juveniles in the reformatory for men; and also to point out the apparent contradiction in the authority relating to the sentencing of juveniles. Section 77 (formerly Chapter 58, P. L. 1919) after providing for commitments to the state school for boys, also authorizes "the punishment provided by law for the same offense."

The powers set forth in § 77 are contradictory to those in § 6, Chapter 146, under which Morton was committed. Section 6, Chapter 146 was first enacted in 1931 and is antedated by § 77. As a result, it may well be that § 77, as well as § 80, are repealed by implication.

The majority opinion recognizes that there was a hiatus between the years 1943 and 1951 when there was no power to sentence a juvenile to the reformatory for men. The majority opinion says:

"From 1937 to 1943 vicious and unruly boys over the age of 16 years could have been so committed. From 1951 to the present such a commitment for all boys under 17 years down the range of the juvenile scale has been permissible."

It was in 1943, of course, that the legislature enacted a section to the effect that no child under the age of 17 years could be sentenced to jail, reformatory or prison; and in

1951 the statute was amended by striking out the word "reformatory."

What of the period between 1943 and 1951? If there was no power to commit between these years of 1943 to 1951, what law has been enacted to authorize such commitment since then?

The majority opinion says that § 66, Chapter 27, was amended by implication and would read into the section words equivalent to the following:

"And juveniles over the age of 16 years found guilty of juvenile delinquency."

As previously stated, we interpret laws and do not enact them.

The cases cited in the majority opinion in support of its interpretation of the statute are not in point. As a matter of fact not one case upholds the premise intended to be supported.

The case of *State* v. *Koliche*, 143 Me. 281, involved a statute forbidding the sale of intoxicating liquor by a licensee to a minor under the age of 18 years. Respondent contended that criminal intent to sell to such a minor must be proven as a necessary element of the offense. The Court said the question presented was one of statutory construction and ruled that intent is not a necessary element of the offense.

The case of *Craughwell et als.* v. *Mousam River Trust Co.* 113 Me. 531, involves a statute relating to dissolution of corporations.

In *State* v. *Cavalluzzi*, 113 Me. 41, the state had failed to charge in the indictment that the respondent was a woman in accordance with the provisions of the pertinent statute. The Court ruled that the absence of the word "woman" was not fatal to the indictment.

In the case of *State* v. *J. P. Bass Company,* 104 Me. 288, the Court, in interpreting a statute ruled that the statute in question forbidding the publication of advertisements of the sale of intoxicating liquors included advertisements of intoxicating liquors sold without the state.

In *Rackliff* v. *Greenbush,* 93 Me. 99, the Court interpreted a statute involving the right to the recovery of burial expenses from towns:

In *State* v. *Frederickson,* 101 Me. 37, the Court ruled that cider, referred to in one section of a statute, was included in a list of intoxicating liquors described in another section.

The cases of *Gould* v. *Bangor & Piscataquis Railroad,* 82 Me. 122, and *Cotton* v. *Wiscasset, Waterville & Farmington Railroad Company,* 98 Me. 511, are concerned with the interpretation of statutes relating to statutory fences.

As a matter of fact, one of the cases cited supports the position taken in this opinion. In *State* v. *Wallace,* 102 Me. 229, 232, the Court said:

> "It is a recognized rule that a penal statute is to be construed strictly in favor of the rights of a respondent. A statutory offense cannot be created by inference or implication nor can the effect of a penal statute be extended beyond the plain meaning of the language used."

The following statement to be found in 128 Me. 298, seems to be quite applicable:

> "The current of authority at the present day is in favor of reading statutes according to the natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending their operation."

I lend my hearty approval to the sentiments expressed by my associates relating to the noteworthy reforms adopted

and developed since 1919 for the moral and social regeneration of criminal malefactors. However, I can see no connection between the theory of reformation and illegal confinement in a penal institution.

The majority opinion cites with approval the case of *Gosselin Petitioner*, 141 Me. 412. At the time Mrs. Gosselin was committed to the reformatory for women, § 53, Chapter 23, R. S. 1944 was in effect, and this section provided that "when a woman is sentenced to the reformatory for women, the court or trial justice imposing the sentence shall not fix the term of such confinement unless it be for a term of more than 3 years." This section went on to recite that the duration of the commitment including time spent on parole should not exceed 3 years except where the maximum term specified by law for the crime for which the offender was sentenced shall exceed that period. Presumably, the section speaks of sentences in excess of 3 years because women sentenced to definite terms for felonies serve their time in the reformatory for women.

At the time of the Gosselin Case, the section relating to the reformatory for men was Section 66, Chapter 23, R. S. 1944, which provided for an indeterminate sentence for various offenses, regardless of the length of the sentence, and this section provided that no male committed for a felony could be held for more than 5 years and in case of misdemeanors not more than 2 years.

Mrs. Gosselin brought a petition for habeas corpus on the ground that she was denied the equal protection of the law in that a woman could be deprived of her liberty for 3 years and a man could be deprived of his liberty for only 2 years for the same offense.

The issue upon which the action was brought was never decided by this Court, but an ingenuous solution was found by a ruling that confinement in a reformatory was not

strictly imprisonment; that a person sent to a reformatory was sent there to be reformed and rehabilitated, and that if in the judgment of the legislature, it took longer to reform a woman than a man, such was within its legislative prerogative.

See Page 421, *Gosselin Petitioner for Writ of Habeas Corpus, supra*:

> "Whether the members of this Court individually would have considered that less time would be required to accomplish the reform of male first offenders than would be requisite for other males or for females or that two years would be sufficient for more hardened males although the reform of women would require three years is not important. Our power and authority collectively is to decide no more than that legislative decision is reasonable or unreasonable."

In 1951, § 66, Chapter 23, was amended by Chapter 84, P. L. 1951 (now § 67, Chapter 27, R. S. 1954) which now provides in part:

> "When a male is ordered committed to the reformatory for men, the court or trial justice ordering the commitment shall not prescribe the limit thereof, *but no male committed to the reformatory as aforesaid shall be held for more than 3 years.*" (Emphasis supplied.)

It will be seen that by virtue of this amendment, this section was put in accord with the section relating to women, the difference between the two previous sections being the basis for the Gosselin claim. So, apparently, in 1951, the legislature in its wisdom, concluded that it would take just as long to reform a man as it would a woman.

The decision in the Gosselin case is to the effect that confinement in a reformatory, is for the purpose of reformation, and it is not to be deemed as imprisonment in the ordinary sense. Such a conclusion is without merit. A per-

son committed to a reformatory is deprived of his liberty, and no person, man, woman, or child can be incarcerated in a penal institution unless such imprisonment is authorized by law. In this case Morton has a right to demand that his sentence be based upon a properly enacted law and not upon an implication, which itself is vague and ambiguous. When the liberty of a person is at stake, no court should have to resort to mind reading to find out what the law is.

Another question relating to the legality of Morton's commitment is also raised as to the length of his term. How long can he be kept in the reformatory?

The old section for parole from the reformatory for men was Section 71, Chapter 27, R. S. 1954, and this section is specifically repealed by Section 11, Chapter 387, P. L. of 1957.

Section 13, Chapter 27A as enacted by Chapter 387, P. L. 1957, gives the provision regarding eligibility for parole from the reformatory for men.

This section provides that an inmate becomes eligible for parole when *all* of the following conditions are fulfilled:

I. After the expiration of 6 months, if convicted of a misdemeanor, and after the expiration of 1 year, if convicted of a felony.

II. Upon recommendation of the Superintendent to the Board of Parole when the conduct of the inmate justifies it, and,

III. When some suitable employment has been secured for him in advance.

Note that this contemplates that the inmate is serving a sentence for a misdemeanor or a felony, and nowhere is provision made for the parole of a juvenile delinquent.

Section 14, Chapter 27A, provides for the parole from a state school, but a juvenile held in a reformatory is not afforded the protection of any laws relating to parole.

Referring again to Section 87, Chapter 27, which relates to the transfer of incorrigibles, this section provides:

"It shall be the duty of the officers of the reformatory for men to receive any boy so transferred and the remainder of the original commitment shall be executed at the reformatory for men."

That being true, a boy so transferred, although in the reformatory, would actually be serving a state school sentence, and presumably would be subject to the rules of the state school regarding parole.

The very last paragraph in the *Gosselin Case*, 141 Me. 422, is significant upon the question of parole. There the Court said:

"The statute under which she is held carries appropriate provision for her parole, etc."

Another very serious and important objection arises to Morton's commitment.

Section 67, Chapter 27, is the only statute which authorizes commitment to the reformatory for men. It reads in part as follows:

"When a male over the age of 16 years and under the age of 36 years is convicted by any court or trial justice having jurisdiction of the offense, of an offense punishable by imprisonment in the state prison, or in the county jail, or in any house of correction, such court or trial justice may order his commitment to the reformatory for men."

A sentence imposed under authority of the preceding section is an indeterminate one. It presupposes that the candidate for the reformatory stands convicted of an offense punishable in the state prison or in the county jail.

It will be recalled that it was in 1943 when the legislature struck out the paragraph relating to aggravated offenses by juveniles and provided that "no municipal court shall sentence a child under the age of 17 years to jail, reformatory or prison."

Now bearing in mind that a sentence to the reformatory is based on Section 67, Chapter 27, a respondent standing before a municipal court can be sent to the reformatory only if he is subject to a jail offense. However, since 1943, no child under the age of 17 years is subject to a sentence to jail or prison, so that the condition necessary, under § 67, for the imposition of an alternative or indeterminate sentence in the reformatory does not exist.

To repeat in different words, if a boy between the age of 16 and 17 years is not subject to the imposition of a jail sentence by the municipal court, he cannot be given an alternative or indeterminate sentence in the reformatory; and striking out the word "reformatory" in the statute involved, added nothing at all to the power of the municipal court.

This is another way of emphasizing the point, that the clause "or make such other disposition as may seem best for the interests of the child and for the protection of the community" has nothing to do with sentencing, other than to the state schools for boys or girls, because the same section which speaks of other dispositions is met by the sentence that no municipal court shall sentence a child under the age of 17 years to jail.

By the prohibition contained in § 6, Chapter 146, a boy between the ages of 16 and 17 cannot be sentenced to jail by a municipal court. It, therefore, follows that there is no power in the municipal court to impose an alternative sentence to the reformatory for men.

To briefly recapitulate, it is my opinion that powers of the municipal court in juvenile cases are derived solely from

Section 6, Chapter 146, and that nowhere in this section is authority granted to sentence Morton to the reformatory for men.

Moreover, in the reformatory can be detained only persons who have been convicted of a crime, and Morton, by force of the statute, was not convicted of a crime.

The only way Morton could be sent to the reformatory legally would be to first send him to the state school for boys, and then transfer him to the reformatory for men, as an incorrigible, assuming that he were in that category, under the provisions of § 87, Chapter 27, R. S. 1954.

My opinion is that the petitioner was illegally sentenced and committed; that his imprisonment is unlawful and that he should be discharged from custody.